1  SCHIFF HARDIN LLP
   Steven E. Swaney (SB# 221437)
2  sswaney@schiffhardin.com
   Four Embarcadero Center, Suite 1350
3  San Francisco, CA 94111
   Telephone: 415.901.8700
4  Facsimile:  415.901.8701

5  Attorneys for Defendants
   Graco Children's Products, Inc. and
6  Newell Brands Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11 NAYONNA BREZINSKI, on behalf of      Case No.  5:20-cv-00347-SVW-SHK
   herself and all others similarly situated,
12                                       **MEMORANDUM OF POINTS AND**
                    Plaintiff,           **AUTHORITIES IN SUPPORT OF**
13                                       **DEFENDANTS' MOTION TO**
   v.                                    **DISMISS**
14
   GRACO CHILDREN'S PRODUCTS,
15 INC. and NEWELL BRANDS INC.

16                  Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND .................................................................................. 4

III.    MOTION TO DISMISS FOR LACK OF STANDING ......................... 6

        A.    The Recall Is Insufficient to Establish an Injury to Plaintiff ............... 6

        B.    Plaintiff Has No "Benefit of the Bargain" Injury Because the
              Product Has Performed As Advertised .................................................. 8

        C.    Plaintiff Lacks Standing to Assert Claims Based on Products
              She Did Not Purchase ............................................................................ 9

        D.    Plaintiff Lacks Standing to Seek Injunctive Relief ............................. 11

        E.    Plaintiff Lacks Standing to Seek Monetary Relief Because Her
              Damages Claims Are Mooted by the Recall ........................................ 12

IV.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
        UNDER RULE 12(B)(6) ................................................................... 14

        A.    Plaintiff's CLRA Claim Must Be Dismissed For Failure to Plead
              the Required Elements for a Damages Claim ....................................... 14

        B.    Plaintiff Fails to Allege Facts Sufficient to Support Her Fraud-
              Based Claims ........................................................................................ 16

              1.    The Complaint Fails to Identify Any Affirmative
                    Misrepresentations Upon Which Plaintiff Relied ..................... 17

              2.    Plaintiff Fails to Plausibly Allege an Actionable Omission ..... 19

        C.    Plaintiff Fails to Allege a Breach of Warranty Claim ......................... 21

V.      PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS SHOULD
        BE DISMISSED UNDER RULE 12(B)(6), 12(B)(1), AND/OR
        STRICKEN UNDER RULE 12(F) ..................................................... 22

        A.    The Failure to Specify the Applicable Law Requires Dismissal ........ 22

        B.    Plaintiff's Nationwide Class Allegations Should Be Stricken
              Under Rule 12(f) .................................................................................. 23

        C.    Plaintiff's Nationwide Class Allegations Should Be Dismissed
              Because She Lacks Standing ................................................................ 25

VI.     CONCLUSION .................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Allen v. Hylands, Inc.*,
  2012 WL 1656750 (C.D. Cal. May 2, 2012).....................................................10

*Ang v. Bimbo Bakeries USA, Inc.*,
  2014 WL 1024182 (N.D. Cal. Mar. 13, 2014)..................................................11

*Avila v. Vita Pharma., Inc.*,
  2013 WL 12124054 (C.D. Cal. Feb. 7, 2013)...................................................16

*Beckman v. Ariz. Canning Co.*,
  2019 WL 4277393 (S.D. Cal. Sept. 9, 2019) ...................................................15

*Bell v. Blizzard Entmt., Inc.*,
  2013 WL 12063912 (C.D. Cal. Apr. 3, 2013).............................................11, 12

*Bertram v. Terayon Comm'n Sys., Inc.*,
  2001 WL 514358 (C.D. Cal. Mar. 27, 2001) ...................................................13

*Bobo v. Optimum Nutrition, Inc.*,
  2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ...............................................10

*Cadena v. Am. Honda Motor Co.*,
  2019 WL 3059931 (C.D. Cal. May 29, 2019)...................................................20

*Campbell v. eBay, Inc.*,
  2013 WL 4764526 (N.D. Cal. Sept. 5, 2013)...................................................15

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ..............................................................16

*Cheng v. BMW of N. Am., LLC*,
  2013 WL 3940815 (C.D. Cal. July 26, 2013) ..................................................14

*City of Los Angeles v. Davis*,
  440 U.S. 625 (1979) ........................................................................................12

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ................................................................... 11

*Coffelt v. Kroger Co.*,
  2018 WL 6004543 (C.D. Cal. Aug. 17, 2018) ......................... 2, 6, 7, 8

*Contreras v. Johnson & Johnson Consumer Cos.*,
  2012 WL 12096581 (C.D. Cal. Nov. 29, 2012) ......................... 10

*Darisse v. Nest Labs, Inc.*,
  2016 WL 4385849 (N.D. Cal. Aug. 15, 2016) ......................... 24

*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) ................................................. 12

*DeArmey v. Hawaiian Isles Kona Coffee Co.*,
  2019 WL 6723413 (C.D. Cal. July 22, 2019) ......................... 24, 25

*Degelmann v. Advanced Med. Optics, Inc.*,
  2010 WL 55874 (N.D. Cal. Jan. 4, 2010) ............................... 7

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ................................... 17

*GCB Commc'ns v. U.S. S. Commc'ns*,
  650 F.3d 1257 (9th Cir. 2011) ............................................... 12

*Gram v. Intelligender*,
  2010 WL 11601035 (C.D. Cal. Oct. 8, 2010) ......................... 23

*Jasper v. Abbott Labs., Inc.*,
  834 F. Supp. 2d 766 (N.D. Ill. 2011) ..................................... 7

*Katz v. Fiat/Chrysler Automobiles*,
  2015 WL 2452419 (M.D. Pa. May 21, 2015) ......................... 7

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ............................................... 16, 17

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................... 5

*K&N Eng'g, Inc. v. Spectre Performance*,
  2010 WL 11468976 (C.D. Cal. Feb. 9, 2010) ......................... 13

*Kramer v. Wilson Sporting Goods Co.*,
2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) ................................................24

*Laster v. T-Mobile USA, Inc.*,
407 F. Supp. 2d 1181 (S.D. Cal. 2005) ...........................................15, 16

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................6, 10

*Marsh v. First Bank of Del.*,
2014 WL 554553 (N.D. Cal. Feb. 7, 2014) .....................................24

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .....................................................23, 24

*In re McNeil Consumer Healthcare Marketing & Sales Prac. Litig.*,
877 F. Supp. 2d 254 (E.D. Pa. 2012) ...................................................7

*Mollicone v. Universal Handicraft, Inc.*,
2017 WL 440257 (C.D. Cal. Jan. 30, 2017) .......................................25

*In re NJOY Consumer Class Action Litig.*,
2014 WL 12586074 (C.D. Cal. Oct. 20, 2014) ..................................21

*O'Neil v. Simplicity, Inc.*,
553 F. Supp. 2d 1110 (D. Minn. 2008) ....................................6, 7, 8, 9

*O'Neil v. Simplicity, Inc.*,
574 F.3d 501 (8th Cir. 2009) ...............................................................7, 9

*Outboard Marine Corp. v. Superior Court*,
52 Cal. App. 3d 30 (1975) ................................................................ 16

*In re Packaged Seafood Prods. Antitrust Litig.*,
242 F. Supp. 3d 1033 (S.D. Cal. 2017) ............................................22

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .............................................................................24

*Romero v. Flowers Bakeries, LLC*,
2015 WL 2125004 (N.D. Cal. May 6, 2015) ...............................18, 19

*Route v. Mead Johnson Nutrition Co.*,
2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ......................................24

*Rushing v. Williams-Sonoma, Inc.*,
   2016 WL 4269787 (N.D. Cal. Aug. 15, 2016) ................................... 11

*Sims v. Kia Motors Am., Inc.*,
   2014 WL 12558251 (C.D. Cal. Oct. 8, 2014) ................................... 19

*Spokeo, Inc. v. Robins*,
   —— U.S. ——, 136 S. Ct. 1540 (2016) ........................................... 6

*In re Static Random Access Memory Antitrust Litig.*,
   580 F. Supp. 2d 896 (N.D. Cal. 2008) ........................................... 23

*Steel Co. v. Citizens for Better Env't*,
   523 U.S. 83 (1998) ................................................................... 6

*Stephenson v. Neutrogena Corp.*,
   2012 WL 8527784 (N.D. Cal. July 27, 2012) ................................... 11

*Stitt v. Citibank*,
   2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ................................... 24

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ................................................................... 11

*Thomas v. Costco Wholesale Corp.*,
   2013 WL 1435292 (N.D. Cal. Apr. 9, 2013) ................................... 19

*Tosh-Surryhne v. Abbott Labs. Inc.*,
   2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) ................................... 13

*Town of Chester v. Laroe Estates, Inc.*,
   --- U.S. ---, 137 S.Ct. 1645 (2017) ........................................... 11

*Tsonev v. Kia Motors Am., Inc.*,
   2016 WL 10000244 (C.D. Cal. Nov. 9, 2016) ................................... 24

*Vavak v. Abbott Labs., Inc.*,
   2011 WL 10550065 (C.D. Cal. June 17, 2011) ................................... 13

*Vess v. Ciba–Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ........................................... 17, 18

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003) ........................................... 15

*Wash. Mut. Bank v. Superior Court*,
  24 Cal. 4th 906 (2001) ................................................................. 23

*Whitson v Bumbo*,
  2009 WL 1515597 (N.D. Cal. April 16, 2009) ...................... 2, 7, 8, 9

*Winzler v. Toyota Motor Sales, U.S.A. Inc.*,
  681 F.3d 1208 (10th Cir. 2012) .................................................. 13, 14

**Statutes**

Cal. Bus. & Prof. Code § 17200 et seq. .......................................... *passim*

Cal. Bus. & Prof. Code § 17500 et seq. .................................. 6, 13, 16, 17

Cal. Civ. Code § 1750 et seq. ......................................................... *passim*

Cal. Civ. Code § 1761(d) ..................................................................... 14

Cal. Civ. Code § 1770(a) ..................................................................... 14

Cal. Civ. Code § 1782 .......................................................................... 15

Cal. Civ. Code § 1782(a) ..................................................................... 15

Fed. R. Civ. P. 8 ................................................................................... 22

Fed. R. Civ. P. 9 ................................................................................... 19

Fed. R. Civ. P. 9(b) ......................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................... 5

Fed. R. Civ. P. 12(b)(1) ........................................................ 6, 12, 22, 25

Fed. R. Civ. P. 12(b)(6) .................................................................. *passim*

Fed. R. Civ. P. 12(F) ...................................................................... 22, 23

**Other Authorities**

https://safetosleep.nichd.nih.gov/safesleepbasics/SIDS/SIDSisNot ...................... 20

## I.   INTRODUCTION

This is a quintessential no-injury product liability case recast as a "consumer fraud" class action. Other than the bare allegations that Plaintiff bought a Graco Little Lounger Rocking Seat in 2018 and that Defendants voluntarily recalled Little Lounger Seats in January 2020, the Complaint contains not a single allegation relating to Plaintiff's use of the product or identifying any injury that the product caused her. It appears Plaintiff believes the mere existence of a product recall is sufficient both to establish an injury in fact and to support sweeping allegations of "consumer fraud." But Plaintiff is wrong: to invoke the jurisdiction of the federal courts, Plaintiff must set forth facts establishing that she sustained an actual injury caused by some wrongful conduct attributable to Defendants. And courts in this Circuit have made clear that the mere purchase of an allegedly "defective" product subject to a recall is not enough, without more, to establish an injury in fact to support Article III standing. Here, the factual allegations in the Complaint—to the extent there are any—come nowhere close to establishing that Plaintiff suffered a concrete and particularized injury sufficient to confer standing, or that Defendants "defrauded" consumers by knowingly selling a dangerous product. Accordingly, the complaint should be dismissed for lack of jurisdiction and/or failure to state a claim.

Although there have been *no* reported injuries related to the Little Lounger Seat, Defendants—in conjunction with the United States Consumer Product Safety Commission—initiated a voluntary recall of the product based on positional asphyxiation incidents that have occurred in *other manufacturers'* "incline sleep" products. That is, despite there being *zero* reports of such incidents occurring in the Little Lounger Seat, and despite the fact that the Little Lounger Seat was *not* marketed as an "incline sleep product," out of an abundance of caution Defendants proactively recalled the product. The CPSC recall provides both notice to consumers and a remedy—including for many purchasers a *full refund* of the actual purchase price plus sales tax; other consumers are entitled to an $80 voucher

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

1   representing the suggested retail price of the Little Lounger Seat. Thus, purchasers

2   of Little Lounger Seats, including Plaintiff, already have a remedy in hand that

3   provides them with a refund of the money they paid for the product—even though

4   none of them ever experienced a positional asphyxiation incident.

5        Rather than availing herself of the full refund already available to her, Plaintiff

6   has brought this putative class action. But courts in this Circuit and around the

7   country have held that the mere fact of a product recall does not establish that owners

8   of the product have suffered an "overpayment" injury sufficient to confer Article III

9   standing. *See, e.g.*, *Coffelt v. Kroger Co.*, 2018 WL 6004543, at *10 (C.D. Cal. Aug.

10  17, 2018) ("[T]he presence of a [product] recall alone . . . does not establish harm,

11  economic or otherwise."); *Whitson v Bumbo*, 2009 WL 1515597, at *4 (N.D. Cal.

12  April 16, 2009) (plaintiff's purchase of a child seat that was later recalled did not

13  establish standing where she had "not alleged how or whether she used her Bumbo

14  seat, nor has she alleged that she or a child on whose behalf she has standing to sue

15  was injured by the seat"). Plaintiff pleads nothing beyond the existence of the recall

16  that demonstrates any injury to her—she makes no allegation that she ever used her

17  Little Lounger Seat, much less that it malfunctioned or that it has done anything less

18  than provide her with exactly what she bargained for.

19        Even if Plaintiff had standing, the Complaint fails state a claim for relief. The

20  gravamen of Plaintiff's legal claims appears to be that "Inclined Sleepers are unsafe

21  for sleeping infants [but] Defendants marketed and sold the products as suitable for

22  infants." Compl. ¶ 24. But nowhere does the Complaint identify any actual

23  marketing statement specific to the Little Lounger Seat that Plaintiff saw and relied

24  upon, much less any marketing statements representing the Little Lounger Seat to

25  be an "inclined sleeper." Rule 9(b) requires Plaintiff to provide a clear and

26  unambiguous account of the allegedly fraudulent statements that form the basis for

27  her claim; the Complaint comes nowhere close to meeting this requirement.

28        Recognizing she has no basis to claim the product she purchased was

"misleadingly advertised," Plaintiff attempts to bolster her claims by including in her allegations two *different* Graco products that she never purchased and that are not subject to a recall: the Duet Glide Baby Swing and the DreamGlider. Plaintiff lumps the Little Lounger Seat together with these unpurchased products, labels them all as "inclined sleepers," and then vaguely alleges they were all "deceptively marketed" as "safe environments for sleep"—despite the fact that Plaintiff never bought the Duet Glide or DreamGlider and never acted upon any of the marketing statements specific to those products. This sleight-of-hand maneuver fails because Plaintiff cannot, as a matter of law, have any injury caused by products she never purchased and alleged marketing statements she never saw or relied upon.

Plaintiff's fraudulent non-disclosure claims fare no better. The Complaint's scattershot allegations reveal no coherent theory as to what information Defendants should have disclosed to consumers regarding the Little Lounger Seat. Plaintiff's vague mantra, repeated throughout the Complaint, that "inclined sleepers" are not "suitable for infants" (*e.g.*, Compl. ¶ 1), is insufficient under Rule 9(b) to adequately identify what Defendants were allegedly required to disclose. To the extent Plaintiff's theory is that Defendants were obligated to disclose the "risk" of positional asphyxiation she claims to be associated with "inclined sleepers," she fails to allege Defendants' knowledge that the Little Lounger Seat presented such a "risk" at the time she purchased the product in July 2018. Again, *there has never been a reported positional asphyxiation incident in a Little Lounger Seat*. Plaintiff's conclusory—and outrageous—assertion that Defendants have known of this asphyxiation risk "for as long as they sold the" Little Lounger Seat (Compl. ¶ 6) is insufficient to support her accusations. Indeed, Rule 9(b) exists for the very reason of disallowing such vague, conclusory assertions to survive a motion to dismiss.

Plaintiff's claims are subject to dismissal for other reasons, as well. Plaintiff brings a variety of common-law causes of action on behalf of a proposed nationwide class, without specifying which jurisdiction's law applies to those

claims. This requires dismissal under Rule 12(b)(6). Moreover, these nationwide class allegations should be stricken because such claims cannot be asserted on behalf of a nationwide class without violating due process. For the foregoing reasons, among many others, the Complaint should be dismissed in its entirety.

## II.    BACKGROUND

Plaintiff alleges that in July 2018 she purchased a Little Lounger Seat at Walmart in Moreno Valley, California. Compl. ¶ 9. Beyond that, the Complaint contains no factual allegations regarding Plaintiff: there are no allegations regarding why Plaintiff purchased the Seat; no allegations regarding where, how, or even who used the Seat, if anyone; and no allegations regarding what marketing materials Plaintiff saw, found material, and relied on in making the purchase.

Plaintiff labels the Little Lounger Seat an "inclined sleeper" (*id*. ¶ 1), although the Complaint identifies no advertisements or other marketing statements in which Defendants represented the Little Lounger Seat to be a "sleeper" or "inclined sleeper." According to Plaintiff, "inclined sleepers" are "inherently unsafe" because "positioning an infant at an incline between 10 and 30 degrees . . . increases the risk that the infant's head will slip into a dangerous position, tilt to construct the windpipe and/or cause the infant's face to become pressed against the padded fabric in the [product] and block airflow, which . . . increases the risk of death by asphyxiation." *Id*. ¶ 5. Plaintiff claims she would not have purchased the Little Lounger Seat "had she known that there was a significant risk that the Little Lounger was dangerous and unfit to perform its intended purpose." *Id*. ¶ 9. As indicated above, however, the Complaint does not allege that any child anywhere has ever experienced a "positional asphyxiation" incident in a Little Lounger Seat.

The impetus for this lawsuit is the recent voluntary recall of Little Lounger Seats initiated by Defendants in conjunction with the CPSC. *Id*. ¶ 7. The reason Defendants recalled the Little Lounger Seat is grounded in positional asphyxiation incidents connected to a *different* product made by a *different* manufacturer—the

Fisher-Price Rock 'N Play. *Id.* ¶ 23. To be clear, there have been **zero** reported incidents of positional asphyxiation occurring in a Graco Little Lounger Seat; whatever issue may affect the Fisher-Price Rock 'N Play does not appear to affect the Little Lounger. *See* Swaney Decl. Ex. A. Nevertheless, the Little Lounger was recalled in an abundance of caution due to reports of injuries having occurred after infants placed in *other manufacturers'* inclined sleep products rolled from their back to their stomach or side. *See id.* The recall provides refunds or vouchers to purchasers of the Little Lounger Seats depending on the date of purchase. *See* Swaney Decl. B.[1] Under the terms of the recall, Plaintiff is entitled to receive a voucher either for the actual purchase price (if she has a proof of purchase) or $80 (if she does not, which represents the MSRP for the Little Lounger Seat). That is, Plaintiff is already entitled to a monetary remedy that reimburses her for the full amount she paid for the Little Lounger Seat—which, again, has never malfunctioned or caused any harm to her.

The Complaint also seeks to malign two additional Graco products, the Duet Glide Swing and DreamGlider, even though Plaintiff does not allege she purchased either product. Plaintiff appears to believe she can bring claims relating to those products because she also labels them as "inclined sleepers" (Compl. ¶ 4), but as the Complaint makes clear those products are significantly different in design than the Little Lounger Seat that Plaintiff purchased. *Id.* at p. 20. The marketing statements for those other products are also entirely different than the Little Lounger Seat. *Id.* ¶¶ 4a-4c. Those products are not part of the recall, and there is no allegation of any asphyxiation incidents with those products (and Defendants are aware of none).

Plaintiff asserts common-law claims for fraud, unjust enrichment, and breach of express and implied warranty on behalf of all persons in the United States who purchased Little Lounger Seats, Duet Glide Swings, and DreamGliders, although

---

[1] The recall is referenced throughout the Complaint; thus, the Court may consider the recall announcement in deciding this motion. *See, e.g.*, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (documents incorporated by reference in a complaint may be considered in deciding a Rule 12 motion to dismiss).

1   she does not identify which jurisdiction(s) law(s) she seeks to apply to those claims.

2   *See* Compl. ¶¶ 62-94. She also asserts claims under California's Consumer Legal

3   Remedies Act (CLRA), Unfair Competition Law (UCL), and False Advertising

4   Law (FAL) on behalf a California subclass. *Id.* ¶¶ 95-116.

5   **III.    MOTION TO DISMISS FOR LACK OF STANDING**

6          The complaint must be dismissed under Rule 12(b)(1) for lack of subject-

7   matter jurisdiction because Plaintiff has suffered no injury and therefore lacks

8   standing under Article III. To invoke the jurisdiction of the federal courts, a

9   plaintiff must establish the three elements that form the "irreducible constitutional

10  minimum of standing": (1) injury in fact; (2) causation; and (3) redressability.

11  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also Steel Co. v.*

12  *Citizens for Better Env't*, 523 U.S. 83, 103 (1998) (injury in fact is the "[f]irst and

13  foremost" requirement of standing). To satisfy that requirement, the plaintiff's

14  claimed injury must be "both concrete and particularized," and "not conjectural or

15  hypothetical." *Spokeo, Inc. v. Robins*, ⎯⎯ U.S. ⎯⎯, 136 S. Ct. 1540, 1548 (2016).

16  To be "particularized," the plaintiff must have personally suffered the alleged

17  injury. *Id.* And to be "concrete," the "injury must be 'de facto'; that is, it must

18  actually exist." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must

19  clearly allege ***facts*** demonstrating each element." *Id.* at 1547 (emphasis added).

20         **A.      The Recall Is Insufficient to Establish an Injury to Plaintiff**

21         It is well-settled in the federal courts that "the presence of a [product] recall

22  alone does not establish . . . harm, economic or otherwise." *Coffelt v. Kroger Co.*,

23  2018 WL 6004543, at *10 (C.D. Cal. Aug. 17, 2018); *O'Neil v. Simplicity, Inc.*, 553

24  F. Supp. 2d 1110, 1116 (D. Minn. 2008) (the mere fact a product "has been recalled

25  does not *ipso facto* mean that the [product] has a manifest defect" sufficient to

26  establish injury in fact). Thus, to have Article III standing, the owner of a product

27  subject to a recall must demonstrate an injury beyond simply having purchased the

28  product; merely "alleg[ing] that a product line contains a defect, or that a product is

at risk of manifesting the defect," is not enough. *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503 (8th Cir. 2009).

For these reasons, courts in this Circuit and around the country have dismissed "consumer fraud" class actions based on a product recall where—as here—there are no allegations identifying any actual injury to the named plaintiff herself. *See, e.g.*, *Coffelt*, 2018 WL 6004543, at *10 (purchaser of recalled frozen vegetables lacked standing in the absence of any indication the vegetables he purchased caused him harm); *Whitson*, 2009 WL 1515597, at *6 (purchaser of recalled child seat lacked standing because she alleged no malfunction of her seat or any other harm related to the alleged defect); *Degelmann v. Advanced Med. Optics, Inc.*, 2010 WL 55874, at *4 (N.D. Cal. Jan. 4, 2010) (buyers of recalled contact lens solution had no injury in fact because they could identify no economic loss arising from their purchases); *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 772 (N.D. Ill. 2011) (purchaser of recalled baby formula failed to show injury in absence of allegation that her child was sickened by consuming it); *O'Neil*, 553 F. Supp. 2d at 1116 (owners of recalled "drop-side" crib had no injury in fact because their crib never malfunctioned or caused injury); *In re McNeil Consumer Healthcare Marketing & Sales Prac. Litig.*, 877 F. Supp. 2d 254, 273 (E.D. Pa. 2012) (purchasers of recalled over-the-counter healthcare products lacked injury in fact where they failed to allege they personally suffered physical harm or economic loss); *Katz v. Fiat/Chrysler Automobiles*, 2015 WL 2452419, at *2-3 (M.D. Pa. May 21, 2015) (owner of recalled car lacked standing because the defect never manifested in his vehicle and he had sustained no other harm).

As the foregoing cases make clear, the Complaint must be dismissed for lack of standing because Plaintiff pleads no facts other than the bare allegation that she purchased a Little Lounger Seat. In fact, other than the statement that she bought the product at Walmart in July 2018 and boilerplate language that she "relied on Defendants' representations" at the time of purchase (Compl. ¶ 9), the Complaint

1   contains not a single fact regarding Plaintiff *at all*. Plaintiff does not allege that any

2   child even *used* the Little Lounger Seat she purchased, much less that her Little

3   Lounger Seat caused any injury to any child. Simply put, the complaint contains no

4   allegation that Plaintiff suffered a "concrete" or "particularized" injury caused by the

5   Little Lounger Seat; that Graco has voluntarily recalled the product is simply not

6   enough, without more, to establish injury in fact to Plaintiff. *See Coffelt*, 2018 WL

7   6004543, at *8; *Whitson*, 2009 WL 1515597, at *4.

8        **B.    Plaintiff Has No "Benefit of the Bargain" Injury Because the**
9              **Product Has Performed As Advertised**

10       Plaintiff will surely argue the Complaint adequately pleads an economic

11   injury in the form of "overpaying" for a product she thought was safe for a child but

12   that is allegedly "not safe." *See, e.g.*, Compl. ¶ 51 (alleging "Defendants' deceptive

13   marketing . . . induced consumers who would not have otherwise purchased the

14   [product] to purchase it. . . and/or pay a higher price than they would have

15   otherwise paid for the product were it not false or misleadingly advertised."). But

16   this "benefit of the bargain" theory of injury is untenable in this case because there

17   is no indication that Plaintiff's Little Lounger Seat failed to perform as advertised.

18       The theory of Plaintiff's case is that the Little Lounger Seat she purchased

19   increased the risk of positional asphyxia to children sleeping in the Seat (Compl. ¶ 5);

20   however, neither Plaintiff—nor any other purchaser of a Little Lounger Seat—has

21   ever experienced such an incident. Because Plaintiff "fail[s] to allege that her [seat]

22   manifested the purported defect . . . [she] does not have standing for her claims under

23   a 'benefit of the bargain' theory or any other stated theory." *Whitson*, 2009 WL

24   1515597, at *6. That is, Plaintiff has no "economic injury" based on her purchase of

25   a product that has actually served its intended purpose for years without causing

26   harm to anyone.

27       The *O'Neil v. Simplicity* case is directly on point. There, the plaintiffs

28   brought a putative class action based on their purchase of a "drop side" crib that

was later recalled by the manufacturer due to a potential entrapment hazard. 553 F. Supp. 2d 1110, 1111-12 (D. Minn. 2008). The plaintiffs alleged a "benefit-of-the-bargain" theory like the one Plaintiff advances here—*i.e.*, that they "bargained for a safe crib with a functioning drop side[, but] they received a crib without one." *Id.* at 1116. But the court concluded "that benefit-of-the-bargain damages do not cut the mustard for the types of claims at issue here," because there was no indication the plaintiffs' crib failed to deliver what was promised:

> [Plaintiffs] cannot complain that they received less than what they bargained for—that is, they cannot claim they received a crib without a functioning drop side—when their drop side has functioned without incident since it was purchased over four years ago . . . . Simply put, the [Plaintiffs] bargained for a crib with a functioning drop side, and that is precisely what they received.

*Id.* at 1118. On appeal the Eighth Circuit affirmed, finding that a "benefit-of-the-bargain" theory of injury was unfounded "because [defendants] have not failed to deliver what was promised. . . . The [Plaintiffs'] crib performs just as it was intended, and thus there is no injury and no basis for relief." *O'Neil*, 574 F.3d at 504-05; *see also Whitson*, 2009 WL 1515597, at *4 (plaintiff's purchase of a child seat that was recalled by manufacturer did not establish standing where she had "not alleged how or whether she used her Bumbo seat, nor has she alleged that she or a child on whose behalf she has standing to sue was injured by the seat").

The same is true here. Plaintiff bargained for Little Lounger Seat presumably to use as a seat in which to place an infant, and there is no factual allegation in the Complaint that the product failed to serve that purpose. Simply put, Plaintiff bought a product almost two years ago but does not allege she ever experienced any problem with it; on these facts, she cannot plausibly claim she failed to receive what she paid for. "[T]hus there is no injury and no basis for relief." *O'Neil*, 574 F.3d at 505.

## C.   Plaintiff Lacks Standing to Assert Claims Based on Products She Did Not Purchase

Plaintiff also lacks standing to pursue claims based on the Duet Glide Swing and DreamGlider because she fails to allege that she sustained any injury caused by

those unpurchased products. *See Lujan*, 504 U.S. at 560 (Article III standing requires "a causal connection between the injury and the conduct complained of"). As Plaintiff concedes, the allegedly misleading statements on the packaging of the Duet Glide Swing and DreamGlider are *different* from each other and *different* from those on the packaging of the Little Lounger Seat. Compl. ¶¶ 4(a–c). And at no point in the Complaint does Plaintiff allege that she bought either a Duet Glide Swing or a DreamGlider. Thus, Plaintiff cannot have any injury—let alone a concrete and particularized injury—caused by advertising statements associated with the Duet Glide Swing or DreamGlider. *See, e.g.*, *Bobo v. Optimum Nutrition, Inc.*, 2015 WL 13102417, at *3 (S.D. Cal. Sept. 11, 2015) ("The Court is not persuaded that Plaintiff should be allowed to pursue claims based on products he did not purchase because he has not alleged the requisite economic injury-in-fact as to those products."); *Contreras v. Johnson & Johnson Consumer Cos.,* 2012 WL 12096581, at *2 (C.D. Cal. Nov. 29, 2012) ("Having admittedly not purchased three of the four sunscreen products at issue in this case, Plaintiff cannot have suffered any injury in fact with respect to those products, and therefore lacks Article III standing in that regard."). As a result, Plaintiff has no plausible basis to claim that her purchase of the Little Lounger Seat gives her standing to assert fraud-based claims relating to those unpurchased products. *See Allen v. Hylands, Inc.*, 2012 WL 1656750, at *5 (C.D. Cal. May 2, 2012) ("Plaintiffs lack standing to assert claims arising out of any alleged false or misleading statements that Defendants made about their homeopathic products that Plaintiffs have not purchased.").

Moreover, the Little Lounger, Duet Glide, and DreamGlider are not different "versions" of the same product; each is a unique product with a concept and design distinct from the other two products. Even from the photos in the Complaint, it is apparent that the design of the Duet Glide and DreamGlider—which are *not* included in the voluntary recall of the Little Lounger Seat—differ in material respects from the Little Lounger. Compl. ¶ 19. Because the unpurchased products are distinct products

1   with distinct statements on the packaging, and because Plaintiff's claims depend on

2   the products' design and marketing, the Court would have to engage in an

3   individualized inquiry into the design and allegedly false statements for each

4   product to determine what, if any, similarity exists between them and the Little

5   Lounger. This also defeats Plaintiff's standing as to the unpurchased products. *See,*

6   *e.g.*, *Rushing v. Williams-Sonoma, Inc.*, 2016 WL 4269787, at *3 (N.D. Cal. Aug. 15,

7   2016) (holding that plaintiff lacked standing to sue for products he did not purchase

8   because he may only "pursue claims for products with identical product composition

9   and/or appearance"); *Ang v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *9

10  (N.D. Cal. Mar. 13, 2014) (dismissing claims based on unpurchased products

11  because the court would be required to make "numerous contextual determinations"

12  to determine if the products were sufficiently similar); *Stephenson v. Neutrogena*

13  *Corp.*, 2012 WL 8527784, at *1 (N.D. Cal. July 27, 2012) (same).

14          **D.      Plaintiff Lacks Standing to Seek Injunctive Relief**

15          It is axiomatic that Plaintiff must "demonstrate standing for . . . each form of

16  relief that is sought" in the Complaint. *Town of Chester v. Laroe Estates, Inc.*, ---

17  U.S. ---, 137 S.Ct. 1645, 1650 (2017). To establish standing to pursue injunctive

18  relief, Plaintiff must allege facts showing an "actual and imminent" future injury.

19  *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009). Moreover, the impending

20  future injury must be similar to the injury Plaintiff already suffered; "[a]bsent a

21  sufficient likelihood that [she] will again be wronged in a similar way, [Plaintiff is]

22  no more entitled to an injunction than any other citizen." *City of Los Angeles v.*

23  *Lyons*, 461 U.S. 95, 111 (1983). This requirement is often dispositive of injunctive

24  relief claims in "consumer fraud" actions like this one, because at the time of filing

25  suit the plaintiff already "knows" the product was supposedly "deceptively

26  advertised" and thus is unlikely to be deceived again by the same advertisement or

27  injured again by purchasing the product. *See, e.g.*, *Bell v. Blizzard Entm't, Inc.*,

28  2013 WL 12063912, at *5 (C.D. Cal. Apr. 3, 2013). Although the Ninth Circuit has

held that a plaintiff in such a case *may* be able to establish standing for injunctive relief, she can only do so by plausibly alleging a likelihood that she will purchase the product again in the future. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018).

Here, Plaintiff does not—and cannot—establish a likelihood of future injury to establish standing to seek prospective injunctive relief. First, she does not allege an intention to purchase a Little Lounger Seat in the future; and the product is no longer being sold, so she could not do so even if she intended to. Second, the gravamen of Plaintiff's claims is that *no* "inclined sleep" product is "suitable for infants." Thus, Plaintiff cannot plausibly allege she intends to purchase any of the products identified in the Complaint when she now believes them all to be unsafe. Because Plaintiff cannot demonstrate she is likely to suffer a similar economic injury in the future by paying for an deceptively marketed "inclined sleeper," she lacks standing to obtain injunctive relief, and that claim should be dismissed—without leave to amend—under Rule 12(b)(1). *See Bell* 2013 WL 12063912, at *5 (injunctive relief claim dismissed with prejudice where plaintiff failed "to demonstrate that [ ] she is realistically threatened by a repetition of the violation").

### E.    Plaintiff Lacks Standing to Seek Monetary Relief Because Her Damages Claims Are Mooted by the Recall

Plaintiff's claims for monetary relief are moot given the recall and accompanying offer of refunds to purchasers of the Little Lounger Seat. A case can be rendered moot for purposes of Article III where certain "relief or events have completely and irrevocably eradicated the effects of the alleged violation." *City of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). The Ninth Circuit has recognized that one of the principal ways for a case to become moot is where "an opposing party has agreed to everything the other party has demanded." *GCB Commc'ns v. U.S. S. Commc'ns*, 650 F.3d 1257, 1267 (9th Cir. 2011). Here, Plaintiff seeks monetary remedies in the form of restitution, "compensatory damages," and other forms of

ancillary relief—but all of these are based on allegedly "overpaying" for the product, and are therefore mooted by Defendants' offer to refund the purchase price.

First, Plaintiff's claims for restitution are moot. Courts frequently recognize that a plaintiff's claims for restitution based on the purchase price of the product are moot where, as here, the plaintiff is offered a refund. *See Vavak v. Abbott Labs., Inc.*, 2011 WL 10550065, at *3 (C.D. Cal. June 17, 2011) ("Because Abbott offered a full refund to consumers who purchased infant formula from the affected lots, [] Plaintiff's request for restitution of the monies spent on the product is moot."); *Tosh-Surryhne v. Abbott Labs. Inc.*, 2011 WL 4500880, at *4 (E.D. Cal. Sept. 27, 2011) (same). Because Plaintiff is already entitled to a refund of the purchase price, including sales tax, for the Little Lounger Seat she purchased (or an amount equal to the MSRP of $80 if she lacks sufficient proof of her purchase), Plaintiff's request for restitution of the money she spent on the Little Lounger is moot.

Second, Plaintiff claims for "compensatory damages" are similarly moot because these claims are essentially claims for restitution. As an initial matter, "[n]either the UCL nor the FAL authorize compensatory damages," *K&N Eng'g, Inc. v. Spectre Performance*, 2010 WL 11468976, at *9 (C.D. Cal. Feb. 9, 2010); and while the CLRA permits recovery of "actual damages," Plaintiff does not (and cannot) allege any "actual damages" beyond the amount she supposedly "overpaid" for the Little Lounger Seat. *See, e.g.*, *Bertram v. Terayon Comm'ns Sys., Inc.*, 2001 WL 514358, at *3 (C.D. Cal. Mar. 27, 2001) ("[A]s Plaintiffs define restitution here, it is indistinguishable from the money damages remedy."). Simply put, Plaintiff does not and cannot show any alleged economic harm that is not mooted by her existing entitlement to a refund pursuant to the recall.

Even if Plaintiff's damages claims were not constitutionally moot, courts have the inherent power to find a case prudentially moot where "events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits." *Winzler v. Toyota Motor Sales, U.S.A.*

*Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012); *Cheng v. BMW of N. Am., LLC*, 2013 WL 3940815, at *2 (C.D. Cal. July 26, 2013) ("Under the doctrine of prudential mootness, there are circumstances under which a controversy, not constitutionally moot, is so 'attenuated that considerations of prudence and comity … counsel [the court] to stay its hand, and to withhold relief it has the power to grant.'"). Here, as in *Winzler* and *Cheng*, Defendants have already provided all the relief Plaintiff could plausibly claim: the Little Lounger Seat has been recalled, and purchasers have been offered refunds. Thus, "[e]ven though a flicker of life may be left in [this case] . . . [this] case [has reached] the point where prolonging the litigation any longer would itself be inequitable." *Winzler*, 681 F.3d at 1210. As Justice Gorsuch aptly observed, "[p]erhaps the lawyers would benefit if this would-be class action labored on through certification, summary judgment, and beyond. But it's hard to see how anyone else could." *Id*. at 1211.

For these reasons, Plaintiff lacks Article III standing because she has no injury in fact and, even if she did, she already has a remedy to redress that "injury." The Complaint should be dismissed for lack of subject matter jurisdiction.

## IV.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

Even if the Complaint adequately alleged facts to establish Plaintiff's standing (it does not), the facts alleged fail to state a claim for relief.

### A.   Plaintiff's CLRA Claim Must Be Dismissed For Failure to Plead the Required Elements for a Damages Claim

Plaintiff's CLRA claim is improperly pled and must be dismissed. That cause of action is brought under various subsections of Cal. Civ. Code § 1770(a), which apply to any "transaction intended to result or which results in the sale or lease of goods or services to any consumer." The statute defines "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." Cal. Civ. Code §§ 1761(d). But nowhere

1   does the Complaint allege that Plaintiff purchased the Little Lounger Seat for

2   personal, family, or household purposes (as opposed to, for example, purchasing it

3   for use at a day care facility or other business). Thus, the CLRA claim must be

4   dismissed. *See Campbell v. eBay, Inc.*, 2013 WL 4764526, at *5 (N.D. Cal. Sept. 5,

5   2013) (CLRA claim dismissed for failure to "allege facts showing that [plaintiff] is

6   a 'consumer' as contemplated by the CLRA.").

7       In addition, Plaintiff's CLRA damages claim must be dismissed because

8   Plaintiff failed to abide by the mandatory notice provisions in § 1782, which require

9   a consumer to notify a defendant of any alleged violations of the CLRA 30 or more

10  days "prior to the commencement of an action for damages." Cal. Civ. Code §

11  1782(a). Here, Plaintiff alleges she sent the notice letter to Defendants on February

12  19, 2020 (Compl. ¶ 102), and filed this action the *very next day*, February 20, 2020.

13  To state what is obvious: this does not comply with the mandatory 30-day notice

14  requirement, and Plaintiff's statement that her provision of notice to Defendants

15  "complies in all respects with California Civil Code §1782(a)" (*id.*) is demonstrably

16  false. Plaintiff's CLRA claim must be dismissed on that basis. *See, e.g.*, *Von Grabe*

17  *v. Sprint PCS*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing *with*

18  *prejudice* CLRA claim for failure to comply with § 1782's notice requirements)

19      The only open question is whether the CLRA damages claim should be

20  dismissed with or without prejudice. Although district courts in this Circuit are split

21  on the issue, many dismiss the CLRA damages claim *with* prejudice for failure to

22  adhere to the notice requirements. *See, e.g.*, *Von Grabe*, 312 F. Supp. 2d at 1304;

23  *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1196 (S.D. Cal. 2005)

24  ("Because Plaintiffs failed to provide notice to Defendants pursuant to § 1782(a),

25  their claim for damages under the CLRA must be dismissed with prejudice.");

26  *Beckman v. Ariz. Canning Co.*, 2019 WL 4277393, at *12 (S.D. Cal. Sept. 9, 2019)

27  (same). The reason dismissal with prejudice is warranted is that the "clear intent" of

28  the 30-day notice requirement is to "facilitate pre-complaint settlements of

SCHIFF HARDIN LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-15-        CASE NO. 5:20-CV-00347-SVW-SHK

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

consumer actions where possible," which is only done "by a literal application of the notice provisions." *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975); *see also Laster*, 407 F. Supp. 2d at 1196 ("Strict adherence to the statute's notice provision is required to accomplish the Act's goals of expeditious remediation before litigation."). By filing the Complaint just a day after sending her letter to Defendants, Plaintiff deprived Defendants of the "statutorily required opportunity for settlement" and thus undermined the CLRA's "goals of remediation before litigation." *Id*. This weighs in favor of dismissing the CLRA damages claim with prejudice. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) ("Plaintiff claimed damages without giving the statutorily required opportunity for settlement; [therefore], Plaintiff's claim for damages under the CLRA must be dismissed with prejudice.").

### B.   Plaintiff Fails to Allege Facts Sufficient to Support Her Fraud-Based Claims

Plaintiff brings claims for common-law fraud, as well as statutory claims under California's CLRA, UCL, and FAL, based on supposed "fraudulent representations and omissions" (Compl. ¶ 64), but the Complaint's scattershot allegations reveal no coherent theory as to what advertising statements were supposedly false or what information Defendants were required to disclose. Again, the mere fact that Plaintiff purchased a product that was later recalled does not establish a factual basis that Defendants engaged in *fraud*; to make such an allegation plausible, Plaintiff must satisfy the heightened pleading requirements of Rule 9(b). *See Avila v. Vita Pharma., Inc.*, 2013 WL 12124054, at *2 (C.D. Cal. Feb. 7, 2013) (it is well settled that "Rule 9(b) applies to claims brought under the UCL, the FAL, and the CLRA"). "Rule 9(b) demands the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

Cir. 2009). Thus, Plaintiff's allegations regarding alleged misrepresentations and omissions "must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba–Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

### 1. The Complaint Fails to Identify Any Affirmative Misrepresentations Upon Which Plaintiff Relied

Plaintiff's FAL claim, and her fraud, CLRA, and UCL claims to the extent they are based on alleged misrepresentations, fail because the Complaint nowhere identifies any false or misleading statement relating to the Little Lounger Seat upon which Plaintiff relied. Indeed, a close reading of the Complaint leaves one wondering what misrepresentations Plaintiff believes were part of the Little Lounger Seat's advertising. The Complaint identifies only three marketing statements relating to that product: the word "Lounger" on the product's box; and two other statements—"this product was designed with your baby's comfort in mind," and "the cushioned deep seat has an adjustable recline so that you can find just the right position for your little one"—which Plaintiff vaguely states are found in "other materials used to promote" the Little Lounger Seat. Compl. ¶ 4a. But these statements cannot support a fraudulent misrepresentation claim because Plaintiff does not allege which of these statements (if any) she saw or relied on, where or when she saw them, or how they were material to her. *See Kearns*, 567 F.3d at 1126 (affirming dismissal of false advertising claims under Rule 9(b) where the complaint failed to "specify when [plaintiff] was exposed to [advertisements], which ones he found material . . . [or] which sales material he relied upon in making his decision to buy" the product); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 858 (N.D. Cal. 2012) (dismissing misrepresentation claims because the plaintiff "failed to specifically allege that he saw any of the statements that he claims are misleading, or where he saw them, under what circumstances, how they impacted his purchasing decision, etc."). Plaintiff's vague, boilerplate allegation that she "relied on Defendant's representations" and believed she was buying a product that

was "suitable for infants" (Compl. ¶ 9) is insufficient to satisfy these requirements, as it is "neither sufficiently particular nor particularly plausible." *Romero v. Flowers Bakeries, LLC*, 2015 WL 2125004, at *4 (N.D. Cal. May 6, 2015).

Moreover, Plaintiff does not allege—nor could she—that these statements are false or deceptive. To satisfy Rule 9(b), Plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Vess*, 317 F.3d at 1106. Nowhere does the Complaint explain what is false or misleading about calling the product a "Lounger," or stating the product "was designed with your baby's comfort in mind" and has a "cushioned deep seat [with] an adjustable recline."

Without any marketing statement upon which to base her misrepresentation claims regarding the product she purchased, Plaintiff resorts to sleight of hand: she groups the Little Lounger Seat together with two *different* products (the Duet Glide Swing and DreamGlider), labels them all "inclined sleepers," and then generally alleges there were falsely advertised as "safe environments for infants for sleep." Compl. ¶ 24. This is impermissible for several reasons. First, Plaintiff cannot assert "false advertising" claims based on products she never purchased. *E.g.*, *Romero*, 2015 WL 2125004, at *5. Plaintiff's various allegations regarding the Duet Glide Swing and DreamGlider are utterly irrelevant to her claim that she was misled into purchasing a Little Lounger Seat.

Second, the products were not, in fact, similarly marketed. Plaintiff does not allege the Little Lounger Seat was advertised or otherwise represented to be a "sleeper" of any kind. Plaintiff's misrepresentation claims must be based on actual *representations*, not on her subjective categorization of the product in a way that she believes will shore up her threadbare allegations of "fraud." Indeed, it appears these unpurchased products were inserted into the Complaint for the specific purpose of bolstering Plaintiff's allegation that the Little Lounger Seat is a so-called "sleeper," thus allowing her to attack its advertising on that basis—despite the absence of any facts showing that Defendants ever marketed the Litter Lounger Seat as such.

Third, courts prohibit plaintiffs from "mak[ing] generalized assertions of exemplary misrepresentations across of range of products" to support false advertising claims. *Romero*, 2015 WL 2125004, at *4; *see also Thomas v. Costco Wholesale Corp.*, 2013 WL 1435292, at *6 (N.D. Cal. Apr. 9, 2013). In *Romero*, for example, the plaintiff asserted misrepresentation claims against a bakery for several different marketing statements contained on a number of different products, only some of which the plaintiff had actually purchased herself. But the complaint failed to clearly allege "what specific representations she perceived on each purchased product, what she interpreted those representations to mean, and how those representations were false." *Romero*, 2015 WL 2125004, at *4. "Plaintiff cannot simply identify a list of products, allege a slew of problems with Defendants' labeling of those products, and then ask Defendant and the Court to mix and match." *Id*. Thus, the court concluded that the plaintiff's "undifferentiated allegations of misrepresentations and mislabeling made across purchased and unpurchased products amount to an omnibus assertion that Defendant generally acted wrongly. This is insufficient under Rule 9(b)." *Id*. The same is true here: because Plaintiff fails to "provide a clear and unambiguous account of the allegedly fraudulent, deceptive, or misrepresentative statements with the specificity required by Rule 9," her misrepresentation claims must be dismissed. *Thomas*, 2013 WL 1435292, at *6.

### 2.   Plaintiff Fails to Plausibly Allege an Actionable Omission

Plaintiff also bases her fraud, CLRA, and UCL claims on an alleged "fraudulent omission," yet the Complaint never articulates what information Defendants were legally obligated to disclose to her regarding the Little Lounger Seat. "To meet Rule 9(b)'s requirements in this case, Plaintiff[ ] at a minimum must describe the content of the omission and where the omitted information should or could have been revealed." *Sims v. Kia Motors Am., Inc.*, 2014 WL 12558251, at *4 (C.D. Cal. Oct. 8, 2014). Yet the Complaint does nothing more that repeat Plaintiff's vague mantra that the Little Lounger Seat is not "suitable for infants,"

which is insufficiently precise to satisfy Rule 9(b). *See id.* (dismissing fraudulent omission claim because the complaint failed to state "specifically what Defendants had to disclose," and "the lack of precision in the [complaint] leaves Defendants to guess exactly what information it was obliged to disclose"); *Cadena v. Am. Honda Motor Co.*, 2019 WL 3059931, at *13 (C.D. Cal. May 29, 2019) (same).

To the extent Plaintiff alleges that Defendants were obligated to disclose that "positioning an infant at an incline between 10 and 30 degrees . . . increases the risk of death by asphyxiation" (Compl. ¶ 5), Plaintiff fails to allege facts establishing Defendants knew the Little Lounger Seat posed such a risk at the time she purchased the product in July 2018. Although Plaintiff claims that "Defendants knew about these risk for as long as they sold" the product (Compl. ¶ 6), she sets forth no facts to back up that conclusory assertion.

First, she states that "the American Academy of Pediatrics ('AAP') and other consumer groups repeatedly issued warning about the serious dangers of inclined sleepers" (*id.*), but beyond that vague assertion she provides no further details. The Complaint nowhere identifies any "warning" issued by the AAP or any other consumer group regarding "inclined sleepers," much less when the unidentified "warnings" were issued. Plaintiff devotes over five pages of the Complaint to a discussion of Sudden Infant Death Syndrome (SIDS) (*id.* ¶¶ 29-38)—an entirely *different* phenomena that has nothing to do with the alleged association between inclined sleep positions and a risk of positional asphyxiation described in the Complaint. As the NIH makes unequivocally clear, "SIDS is not the same as suffocation and is not caused by suffocation."[2] The Complaint makes no attempt to explain how these statements regarding recommendations to reduce the risk of *SIDS,* none of which mention "inclined sleepers," pertain to a disclosure Defendants were legally required to make regarding some alleged risk of *positional*

---

[2] https://safetosleep.nichd.nih.gov/safesleepbasics/SIDS/SIDSisNot

*asphyxia* posed by the Little Lounger Seat—which, again, was not marketed as a "sleeper" or "inclined sleeper."

Plaintiff next alleges that in April 2019, the CPSC began working with manufacturers to recall "inclined sleepers." Compl. ¶ 6. But this is long after Plaintiff purchased her Seat, and thus cannot establish Defendants' knowledge at the requisite time. Indeed, Plaintiff's reckless allegation that Defendants have always known the Little Lounger Seat posed an asphyxiation risk is implausible given that *there have been no reports of a single incident of positional asphyxiation in a Little Lounger Seat*. This underscores why Rule 9(b) demands a stronger factual basis for such claims to survive a motion to dismiss—and lays bare how overreaching Plaintiff's accusations actually are. The facts in the Complaint simply do not make the showing necessary to satisfy Rule 9(b) regarding any alleged fraudulent omission.

### C.    Plaintiff Fails to Allege a Breach of Warranty Claim

Plaintiff's breach of warranty claims fail because she does not allege facts sufficient to establish that any warranty was breached.

First, Plaintiff fails to plead the existence of an express warranty. It appears Plaintiff's theory is that marketing statements associated with the Little Lounger Seat constitute written warranties (Compl. ¶¶ 77-79), but as noted above she does not identify any such statements with the requisite specificity to demonstrate they constitute an express warranty upon which she relied in purchasing product. *See, e.g.*, *In re NJOY Consumer Class Action Litig.*, 2014 WL 12586074, at *18 (C.D. Cal. Oct. 20, 2014) ("General assertions about statements included in a variety of advertisements and on a variety of packages do not state a claim for breach of express warranty."). Moreover, Plaintiff fails to allege that her Little Lounger Seat actually malfunctioned or otherwise failed to perform "as warranted."

The same is true with respect to Plaintiff's claim for breach of implied warranty. Plaintiff alleges the implied warranty of merchantability was breached because her Little Lounger Seat is "completely unusable" due to the alleged "safety

1  risk" associated with the Seat, and that the alleged "safety risk" is "substantially

2  likely to manifest" in the product. Compl. ¶¶ 89-90. But the documents incorporated

3  into the Complaint establish that since the Little Lounger Seat was first sold seven

4  years ago, there have been zero reported incidents of the so-called risk ever

5  materializing. Nor does Plaintiff plead any facts regarding her own use of the

6  product, which she presumably has used without incident. The allegations in the

7  Complaint come nowhere close to establishing that children using the Little Lounger

8  Seat are "substantially certain" to asphyxiate. Thus, Plaintiff does not plausibly

9  allege—and cannot plausibly allege—a breach of any implied warranty.

10  **V.   PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS SHOULD BE
11        DISMISSED UNDER RULE 12(B)(6), 12(B)(1), AND/OR STRICKEN
       UNDER RULE 12(F)**

12        The Court should dismiss Plaintiff's generic common-law claims (Counts I-

13  IV) on behalf of a proposed nationwide class because Plaintiff fails to identify the

14  jurisdiction(s) under which she brings these claims and therefore fails to state a

15  claim. To the extent Plaintiff brings those claims under California law, they should

16  be stricken because Plaintiff cannot assert California common-law claims on behalf

17  of a single nationwide class; and to the extent they are brought under the laws of

18  other states, they must be dismissed because Plaintiff lacks standing to sue under the

19  laws of states in which she does not reside and did not purchase the product at issue.

20        **A.    The Failure to Specify the Applicable Law Requires Dismissal**

21        The Court should dismiss Plaintiff's common-law causes of action because

22  she fails to identify the jurisdiction(s) under which she brings these claims. *See In*

23  *re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal.

24  2017) ("[P]laintiffs claim unjust enrichment generally, and do not list any particular

25  jurisdictions to which the allegation should apply.  This alone is fatal to [Plaintiffs']

26  unjust enrichment claim."). This type of "generic pleading" is improper because

27  there are significant variations in state law, and thus failing to identify which

28  jurisdiction's law applies violates the basic notice pleading requirements of Rule 8.

*Gram v. Intelligender*, 2010 WL 11601035, at *4 (C.D. Cal. Oct. 8, 2010) (dismissing nationwide claims that failed to specify which states' laws applied because it not only "den[ies] defendants notice of the claim brought against them, but also makes it impossible for the Court to assess whether the claim has been adequately pled."); *In re Static Random Access Memory Antitrust Litig.*, 580 F. Supp. 2d 896, 910 (N.D. Cal. 2008) (dismissing Plaintiffs' nationwide unjust enrichment claims, in part, because "until Plaintiffs indicate which States' laws support their claim, the Court cannot assess whether the claim has been adequately pled"). Accordingly, Plaintiff's non-jurisdiction specific claims must be dismissed.

### B.   Plaintiff's Nationwide Class Allegations Should Be Stricken Under Rule 12(f)

Plaintiff's common-law causes of action are brought on behalf of every person in the United States who bought a Little Lounger Seat, Duet Glide Swing, and DreamGlider. Compl. ¶ 24. To the extent Plaintiff is attempting to assert California common law claims on behalf of a single nationwide class, she cannot do so because California lacks the necessary "significant contact" with the claim of "each class member." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). Moreover, differences in state laws prohibit a single national class.

It is well settled that application of California law to out-of-state class members is unconstitutional absent a showing that California "has a significant contact or significant aggregation of contacts to the claims of each class member." *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906, 921 (2001); *see also Mazza*, 666 F.3d at 589 (same). Here, California has no connection to this matter beyond the fact that this Plaintiff (and other California residents) purchased Little Lounger Seats in this State, which is insufficient to show "significant contact or significant aggregation of contacts to the claims of each class member." *Wash. Mut. Bank*, 24 Cal. 4th at 921. Thus, under the circumstances of this case, Plaintiff cannot assert California common law claims on behalf of a nationwide class without violating due

1    process. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (due process

2    prohibits plaintiffs from applying the forum state's law to the claims of putative class

3    members in other states where the transactions at issue bear "little or no relationship

4    to the forum"); *Marsh v. First Bank of Del.*, 2014 WL 554553, at *10-11 (N.D. Cal.

5    Feb. 7, 2014) (application of California law to nationwide class would be

6    unconstitutional where the defendants were not incorporated or headquartered in

7    California, and none of the defendants' wrongful conduct occurred in California).

8         In addition, material differences in state laws also preclude Plaintiff's

9    common-law claims from going forward on a nationwide basis. For example, unjust

10   enrichment is not a standalone cause of action in California—unlike in some other

11   states—and the Ninth Circuit has stated that "[t]he elements necessary to establish a

12   claim for unjust enrichment also vary materially from state to state." *Mazza*, 666

13   F.3d at 591. Indeed, "[n]o court in this Circuit has certified a nationwide unjust

14   enrichment class since *Mazza*." *Stitt v. Citibank*, 2015 WL 9177662, at *4 n.4 (N.D.

15   Cal. Dec. 17, 2015). Similarly, the elements of breach of warranty claims vary

16   across many states, precluding a nationwide class on those claims. *See Tsonev v.

17   Kia Motors Am., Inc.*, 2016 WL 10000244 at *5 (C.D. Cal. Nov. 9, 2016) (striking

18   nationwide breach of implied warranty class because "[v]ariations in state law can

19   swamp any common issues and interject a multitude of different legal standards

20   governing a particular claim."); *Darisse v. Nest Labs, Inc.*, 2016 WL 4385849, at

21   *12 (N.D. Cal. Aug. 15, 2016) (identifying eight states that do not require privity

22   for breach of implied warranty and fifteen that do); *Kramer v. Wilson Sporting

23   Goods Co.*, 2013 WL 12133670, at *4-6 (C.D. Cal. Dec. 13, 2013) (striking

24   nationwide breach of express warranty class due to "material differences between

25   California law and the laws of other states"); *Route v. Mead Johnson Nutrition Co.*,

26   2013 WL 658251, at *7-9 (C.D. Cal. Feb. 21, 2013) (same). The same is true for

27   Plaintiff's fraud claim. *See DeArmey v. Hawaiian Isles Kona Coffee Co.,* 2019 WL

28   6723413, at *3 (C.D. Cal. July 22, 2019) ("The nationwide claim for fraud invokes

common law that varies materially from state to state."). Because Plaintiff cannot assert California common-law claims on behalf of a nationwide class without violating due process, and material differences in state common law prevent the national treatment of Plaintiff's common-law claims, the Court should strike Plaintiff's nationwide class from the Complaint.

### C.   Plaintiff's Nationwide Class Allegations Should Be Dismissed Because She Lacks Standing

Assuming Plaintiff's generic "unjust enrichment" and "implied warranty" causes of action are attempting to invoke the common law of other states, not just California, those claims must be dismissed because Plaintiff lacks standing to bring claims under the laws of states in which she does not reside or where she did not purchase the product at issue. *Mollicone v. Universal Handicraft, Inc.*, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) ("[W]hen a representative is lacking for a particular state, all claims based on that state's laws are subject to dismissal."); *DeArmey,* 2019 WL 6723413, at *3 (dismissing plaintiff's nationwide common law claims for lack of standing). Plaintiff here has no standing to bring claims under the laws of other states because she is the sole class representative, and does not allege that she purchased a Little Lounger Seat  anywhere other than California. Therefore, Plaintiff's common law claims should be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction and/or under Rule 12(b)(6) for failure to state a claim.

Dated:    April 15 , 2020          Schiff Hardin LLP

By:      /s/
Steven E. Swaney
Attorneys for Defendants Graco Children's
Products Inc. and Newell Brands Inc.

CH2\23215040.2