**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No. 316791)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        breed@bursor.com
        bscott@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave., Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYONNA BREZINSKI and RACHAEL BISHOP, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>     v.<br><br>GRACO CHILDREN'S PRODUCTS, INC. and NEWELL BRANDS DTC, INC.<br><br>                              Defendants. | Case No. 5:20-cv-00347-SVW-SHK<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE**<br><br>Date:  July 20, 2020<br>Time:  1:30 p.m.<br>Courtroom:  10A, 10th Floor<br>Judge:  Hon. Stephen V. Wilson |

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ...................................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ............................................................................................................. 4

I.   PLAINTIFFS SUFFICENTLY ALLEGE ARTICLE III
     STANDING ................................................................................................... 4

     A.   Plaintiffs Allege Injury-In-Fact .......................................................... 4

     B.   Plaintiffs Have Article III Standing To Assert Claims For
          Substantially Similar Products ............................................................ 6

     C.   Plaintiffs Have Standing To Pursue Injunctive Relief ......................... 7

     D.   Plaintiff Brezinski's Claim Is Not Mooted By The Recall .................... 9

II.  THE COURT SHOULD DENY DEFENDANTS' MOTION
     FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) ............... 11

     A.   Plaintiffs Complied With The CLRA Notice Requirement .................. 11

     B.   Plaintiffs Sufficiently Allege Fraud .................................................... 12

          1.   Plaintiffs Allege Material Misrepresentations
               Regarding the Inclined Sleepers .................................................. 13

          2.   Plaintiffs Plausibly Allege An Actionable Omission ................. 15

     C.   Plaintiffs State Claims For Breaches of Warranty .............................. 16

          1.   Breach of Express Warranty ....................................................... 16

          2.   Breach Of Implied Warranty Of Merchantability ...................... 18

III. IT IS PREMATURE TO STRIKE PLAINTIFFS' CLASS
     ALLEGATIONS ......................................................................................... 19

     A.   California Law Applies On A Motion To Dismiss .............................. 19

     B.   It is Premature To Make Choice-Of-Law Determinations ................... 20

     C.   Plaintiffs Have Standing To Bring Claims On Behalf Of A
          Nationwide Class ............................................................................... 22

CONCLUSION ....................................................................................................... 23

1

# TABLE OF AUTHORITIES

**PAGE(S)**

2

3

**CASES**

4

*Asghari v. Volkswagen Grp. of Am., Inc.,*
   42 F. Supp. 3d 1306 (C.D. Cal. 2013) ..................................................15, 17

5

6

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..............................................................................3

7

8

*Baird v. Samsung Elecs. Am., Inc.,*
   2018 WL 4191542 (N.D. Cal. July 20, 2018)......................................2, 12

9

10

*Baum v. J-B Weld Co.,*
   2019 WL 6841231 (N.D. Cal. Dec. 16, 2019) ........................................7

11

12

*Beasley v. Lucky Stores, Inc.,*
   2020 WL 408971 (N.D. Cal. Jan. 24, 2020) ..........................................14

13

14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..............................................................................3

15

16

*Boswell v. Costco Wholesale Corp.,*
   2016 WL 3360701 (C.D. Cal. June 6, 2016) ........................................17

17

18

*Brown v. Hain Celestial Grp., Inc.,*
   913 F. Supp. 2d 881 (N.D. Cal. 2012) ................................................1, 6

19

20

*Browning v. Unilever United States, Inc.,*
   2017 WL 7660643 (C.D. Cal. Apr. 26, 2017) ......................................16

21

22

*Casas v. Victoria's Secret Stores, LLC,*
   2014 WL 12708972 (C.D. Cal. Oct. 20, 2014) ....................................3, 20

23

*Cholakyan v. Mercedes-Benz USA, LLC,*
   796 F. Supp. 2d 1220 (C.D. Cal. 2011) ..............................................5

24

25

*Cirulli v. Hyundai Motor Co.,*
   2009 WL 5788762 (C.D. Cal. June 12, 2009) ......................................13

26

27

*Clerkin v. MyLife.Com,*
   2011 WL 3809912 (N.D. Cal. Aug. 29, 2011) ......................................19

28

---

*Cunningham v. Ford Motor Co.*,
  2015 WL 13764982 (S.D. Cal. Dec. 7, 2015)...........................................................19

*Dabish v. Brand New Energy, LLC*,
  2016 U.S. Dist. LEXIS 167783 (S.D. Cal. Nov. 23, 2016) ....................................6

*Davidson v. Kimberly-Clark Corp.*,
  873 F.3d at 1103 (9th Cir. 2017)..................................................................8, 9

*DePhillippis v. Living Essentials, LLC*,
  2018 WL 7051065 (S.D. Cal. Nov. 29, 2018) ..........................................................7

*Deposit Guaranty Nat'l Bank v. Roper*,
  445 U.S. 326 (1980).............................................................................................20

*Figy v. Frito-Lay N. Am., Inc.*,
  67 F. Supp. 3d 1075 (N.D. Cal. 2014) ............................................................6, 7

*Forcellati v. Hyland's, Inc.*,
  876 F. Supp. 2d 1155 (C.D. Cal. 2012) ...............................................................22

*Forcellati v. Hyland's, Inc.*,
  2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ...............................................21, 22

*GCB Commc'ns, Inc. v. U.S. Commc'ns, Inc.*,
  650 F.3d 1257 (9th Cir. 2011) ...............................................................................9

*Gold v. Lumber Liquidators, Inc.*,
  2015 WL 7888906 (N.D. Cal. Nov. 30, 2015) .......................................................20

*Guido v. L'Oreal, USA, Inc.*,
  2011 WL 13152488 (C.D. Cal. June 27, 2011) .......................................................5

*Henderson v. Gruma Corp.*,
  2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ....................................................5, 8

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) ...............................................................................4

*In re Big Heart Pet Brands Litig.*,
  2019 WL 8266869 (N.D. Cal. Oct. 4, 2019).....................................................2, 10

*In re Hydroxycut Marketing and Sales Practices Litig.*,
   801 F. Supp. 2d 993(S.D. Cal. 2011)...................................................................17

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) ..............................................................11

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
   Practices, and Products Liability Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) .............................................................4, 5

*In re: Lithium Ion Batteries Antitrust Litig.*,
   2016 WL 948874 (N.D. Cal. Mar. 14, 2016)......................................................23

*Inalou v. Contextlogic, Inc.*,
   2014 WL 12611284 (C.D. Cal. Oct. 6, 2014)......................................................20

*Jordan v. Sosa*,
   654 F.3d 1012 (10th Cir. 2011) ..........................................................................10

*Joseph v. J.M. Smucker Co.*,
   2019 WL 1219708 (C.D. Cal. Mar. 13, 2019)......................................................21

*Kaupelis v. Harbor Freight Tools USA, Inc.*,
   2019 WL 6998661 (C.D. Cal. Oct. 9, 2019)........................................................10

*Kearney v. Hyundai Motor Co.*,
   2010 WL 9093204 (C.D. Cal. June 4, 2010) ........................................................4

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................................2, 13

*Keilholtz v. Lennox Hearth Prod. Inc.*,
   268 F.R.D. 330 (N.D. Cal. 2010).........................................................................21

*Keilholtz v. Superior Fireplace Co.*,
   2009 WL 839076 (N.D. Cal. Mar. 30, 2009)........................................................12

*Keniston v. Roberts*,
   717 F.2d 1295 (9th Cir. 1983) .............................................................................23

*Kutza v. Williams-Sonoma, Inc.*,
   2018 WL 5886611 (N.D. Cal. Nov. 9, 2018) ......................................................2, 9

*Larsen v. Trader Joe's Co.*,
2012 WL 5458396 (N.D. Cal. June 14, 2012) ............................................................8

*Los Angeles Cty. v. Davis*,
440 U.S. 625 (1979) ............................................................9

*Mack v. LLR, Inc.*,
2018 WL 6927860 (C.D. Cal. Aug. 15, 2018) ............................................................18

*Martinelli v. Johnson & Johnson*,
2019 WL 1429653 (E.D. Cal. Mar. 29, 2019) ............................................................21

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ............................................................1, 4

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F. 3d 581 (9th Cir. 2012) ............................................................22

*McCrary v. Elations Co., LLC*,
2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) ............................................................21

*Melendres v. Arpaio*,
784 F.3d 1254 (9th Cir. 2015) ............................................................3, 22

*Melgar v. Zicam LLC*,
2016 WL 1267870 (E.D. Cal. Mar. 31, 2016) ............................................................21

*Microsoft Corp. v. Baker*,
137 S. Ct. 1702 (2017) ............................................................21

*Nguyen v. Barnes & Noble Inc.*,
2015 WL 12766050 (C.D. Cal. Nov. 23, 2015) ............................................................21

*Nguyen v. Nissan N. Am., Inc.*,
932 F.3d 811 (9th Cir. 2019) ............................................................4

*Odom v. Microsoft Corp.*,
486 F.3d 541 (9th Cir. 2007) ............................................................3

*Philips v. Ford Motor Co.*,
2016 WL 693283 (N.D. Cal. Feb. 22, 2016) ............................................................10

*Powell v. McCormack*,
  395 U.S. 486 (1969) ....................................................................................9

*Quiroz v. Sabatino Truffles New York, LLC*,
  2017 WL 8223648 (C.D. Cal. Sept. 18, 2017) .......................................6

*Real v. Johnson & Johnson Consumer Companies, Inc.*,
  2016 WL 3220811 (C.D. Cal. Feb. 8, 2016)..........................................22

*Reitman v. Champion Petfoods USA, Inc.*,
  2019 WL 1670718 (C.D. Cal. Feb. 6, 2019)..........................................14

*Ries v. Arizona Beverages USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................8

*Roberts v. Electrolux Home Prods., Inc.*,
   2013 WL 77553579 (C.D. Cal. Mar. 4, 2013) ......................................18

*Robinson v. Unilever United States, Inc.*,
  2018 WL 6136139 (C.D. Cal. June 25, 2018) .......................................23

*Salazar v. Honest Tea, Inc.*,
  74 F. Supp. 3d 1304 (E.D. Cal. 2014)....................................................14

*Salazar v. Honest Tea, Inc.*,
  2015 WL 75223 (E.D. Cal. Jan. 6, 2015) ................................................6

*Sanchez v. Wal–Mart Stores, Inc.*,
  2008 WL 3272101 (E.D. Cal. Aug. 6, 2008) ...........................................5

*Semegen v. Weidner*,
  780 F.2d 727 (9th Cir. 1985) .................................................................13

*Shank v. Presidio Brands, Inc.*,
  2018 WL 510169 (N.D. Cal. Jan. 23, 2018) ..........................................21

*Strumlauf v. Starbucks Corp.*,
  192 F. Supp. 3d 1025 (N.D. Cal. 2016) ...................................................5

*Tosh-Surryhne v. Abbott Labs. Inc.*,
  2011 WL 4500880 (E.D. Cal. Sept. 27, 2011) .........................................9

*Tracton v. Viva Labs, Inc.*,
   2017 WL 4125053 (S.D. Cal. Sept. 18, 2017) ...........................................19

*Wallace v. SharkNinja Operating, LLC*,
   2020 WL 1139649 (N.D. Cal. Mar. 9, 2020)...........................................18

*Washington v. Baenziger*,
   673 F. Supp. 1478 (N.D. Cal. 1987) .........................................................15

*Winzler v. Toyota Motor Sales U.S.A., Inc.*,
   681 F.3d 1208 (10th Cir. 2012) ...............................................................10

*Wolf v. Hewlett Packard Co.*,
   2016 WL 8931307 (C.D. Cal. Apr. 18, 2016) .........................................22

*Zeiger v. WellPet LLC*,
   304 F. Supp. 3d 837 (N.D. Cal. 2018) .....................................................17

**STATUTES**

Cal. Bus. & Prof. Code § 17200 .................................................................20

Cal. Bus. & Prof. Code § 17500 .................................................................20

Cal. Civ. Code § 1750 ................................................................................20

Cal. Civ. Code § 1782 .........................................................................11, 12

Cal. Com. Code § 2314 ..............................................................................18

**RULES**

Fed. R. Civ. P. 9(b).......................................................................................3

Fed. R. Civ. P. 12(b)(6)............................................................................3, 19

Fed. R. Civ. P. 23 .......................................................................................19

1

**INTRODUCTION**

2       Defendants Graco Children's Products, Inc. and Newell Brands DTC, Inc.

3   (collectively, "Defendants") manufacture and sell infant products.  Defendants'

4   Graco Little Lounger Rocking Seat (the "Little Lounger"), the Graco Duet Glide LX

5   Baby Infant Gliding Swing and Napper/Portable Sleeper (the "Duet Glide"), and the

6   Graco DreamGlider Gliding Seat and Sleeper (the "DreamGlider") (collectively, the

7   "Inclined Sleepers"), all suffer from an inherent safety defect.  *See* First Amended

8   Complaint ("FAC") ¶ 5 (ECF No. 14).

9       Inclined Sleepers are inherently unsafe and unfit for their intended use (*i.e.* as

10  baby sleepers) because such sleepers position infants "at an incline between 10 and

11  30 degrees, [which] significantly increases the risk that the infant's head will slip

12  into a dangerous position, tilt to constrict the windpipe and/or cause the infant's face

13  to become pressed against the padded fabric in the lounge and block airflow, which

14  the infant may be unable to correct."  *Id.*  The design of the Inclined Sleepers

15  therefore increases the risk of infant death by asphyxiation.  *Id.*

16      Defendants first argue that Plaintiffs do not allege standing.  First, Defendants

17  assert that Plaintiffs fail to  "allege their products have provided them anything less

18  than what they bargained for."  Defs.' Br. at 9.  However, Ninth Circuit has long held

19  that a plaintiff's allegations of economic injury confer Article III standing.  *See*

20  *Maya v. Centex Corp.*, 658 F.3d 1060, 1169 (9th Cir. 2011) ("Allegedly, plaintiffs

21  spent money that, absent defendants' actions, they would not have spent.  This is a

22  quintessential injury-in-fact.").  Second, Defendants contend that "Plaintiffs' claims

23  based on the Duet Glide Swing must be dismissed for lack standing."  Defs.' Br. at

24  11.  However, standing is determined by the similarity of the products: "Whether

25  there is sufficient similarity between the products purchased and not purchased."

26  *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881, 890 (N.D. Cal. 2012)

27  (citation omitted).  Here, the products are substantially similar because the products

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"are all inclined sleepers that incline upwards on one end to raise a baby's head and torso between 10 and 30 degrees," and each product is "marketed and sold ... as suitable for infants."  FAC ¶¶ 20, 25.  Third, Defendants argue that "Plaintiffs cannot demonstrate they are likely to suffer a similar economic injury in the future by paying for a deceptively marketed 'inclined sleeper,' they lack standing to obtain injunctive relief."  Defs.' Br. at 12.  That is wrong.  "[A] plaintiff may seek injunctive relief based on the future harm of not being able to rely on the labeling when trying to make an informed choice, regardless of whether the product is reformulated or not."  *Kutza v. Williams-Sonoma, Inc.*, 2018 WL 5886611, at *4 (N.D. Cal. Nov. 9, 2018).  Finally, Defendants assert that "Plaintiff Brezinski's claims for monetary relief are moot given the recall and accompanying offer of refunds to purchasers of the Little Lounger Seat."  Defs.' Br. at 12.  However, a plaintiff's claim is only mooted where "Plaintiffs … allege they accepted a refund from Defendant, and Defendant … put[s] forth [ ] evidence that shows they have done so."  *In re Big Heart Pet Brands Litig.,* 2019 WL 8266869, at *5 (N.D. Cal. Oct. 4, 2019).  That is not the case here.

Next, Defendants contend that Plaintiffs' claims fail under Rule 12(b)(6) because Plaintiffs failed to provide notice under the CLRA.  Defs.' Br. at  14.  However, there is no purpose in dismissing a CLRA claim as untimely when more than 30 days' notice has elapsed: "[I]n cases when a defendant has already had more than thirty days' notice after the filing of an otherwise untimely CLRA claim, there is nothing to gain by dismissing the claim with leave to amend, and the claim should be allowed to proceed if otherwise proper.  *See, e.g.*, *Baird v. Samsung Elecs. Am., Inc.,* 2018 WL 4191542, at *9 (N.D. Cal. July 20, 2018).

Further, Defendants assert that Plaintiffs do not meet the heightened pleading standard for fraud under Rule 9(b).  Defs.' Br. at 15-16.  That too is incorrect because Plaintiffs provide "the who, what, when, where, and how' of the misconduct charged."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).  That is

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

sufficient.  Additionally, Defendants claim that Plaintiffs do not allege breaches of warranty.  Defs.' Br. at 21.  To the contrary, Plaintiffs have alleged the applicable warranties in detail, and explained how Defendants have breached them.  *See* FAC ¶¶ 4, 5, 9, 10, 33, 34.

Finally, Defendants argue that the Court should dismiss Plaintiffs' nationwide class allegations.  Rule 12(b)(6), however, is not an appropriate vehicle to challenge class allegations.  *See Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014) ("Thus, by its plain language, Rule 12(b)(6) outs itself as the wrong device for attacking class treatment.").  Moreover, the Ninth Circuit has held that it is premature to address class allegations at the pleading stage.  *See Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015) ("Any issues regarding the relationship between the class representative and the passive class member … [is] relevant only to class certification, not to standing.").

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Rule 9(b) "requires particularity when pleading 'fraud or mistake.' " *Iqbal*, 566 U.S. at 686.  "Allegations in the complaint, together with reasonable inferences therefrom, are assumed to be true for purposes of the motion." *Odom v. Microsoft Corp.*, 486 F.3d 541, 545 (9th Cir. 2007).

## ARGUMENT

### I.   PLAINTIFFS SUFFICENTLY ALLEGE ARTICLE III STANDING

#### A.   Plaintiffs Allege Injury-In-Fact

Defendants assert that Plaintiffs fail to plausibly "allege their products have provided them anything less than what they bargained for." Defs.' Br. at 9. That is wrong.

The Ninth Circuit has long held that a plaintiff's allegations of economic injury confer Article III standing. *See Maya,* 658 F.3d at 1169 ("Allegedly, plaintiffs spent money that, absent defendants' actions, they would not have spent. This is a quintessential injury-in-fact."); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (holding that where plaintiffs paid more for a product than they otherwise would have paid, they have suffered an Article III injury-in-fact). Just last summer, the Ninth Circuit quoted and cited with approval the decision in *Kearney v. Hyundai Motor Co.*, 2010 WL 9093204, at *5 (C.D. Cal. June 4, 2010), which held that if "'the receipt of a vehicle whose alleged defects reduced the car's value and deprived the consumer of the benefit of the bargain, even when the alleged defects did not later materialize,' then 'the loss was suffered 'at the moment' of purchase.'" *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 820 (9th Cir. 2019) (quoting *Kearney*) (emphasis in original). Further, "to the extent that cases such as …*Whitson* … hold that standing cannot be established absent a manifested defect, and the former cases can be read to support that proposition, the Court disagrees: As long as plaintiffs allege a legally cognizable loss under the "benefit of the bargain" or some other legal theory, they have standing." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 754 F. Supp. 2d 1145, 1161 (C.D. Cal. 2010).

Those same decisions control here. Plaintiffs alleged that they "saw, read, and relied on Defendants' representations that the [inclined sleepers] w[ere] suitable for infants, and thus safe for use." FAC ¶¶ 9-10. Indeed, "[they] relied on the

statement[s] that the DreamGlider could be used as a 'sleeper" and that the "Little Lounger could be used as a "lounger," as well as other representations that the Little Lounger could be used to safely place infants in a supine position." *Id.* Moreover, "[they] would not have purchased the [inclined sleepers] had [they] known that there was a significant risk that the [inclined sleepers] w[ere] dangerous and unfit to perform [their] intended purpose. *Id.* Nothing more is required to support standing *See Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1229-30 (C.D. Cal. 2011) ("Cholakyan need only allege that he suffered a concrete financial loss to demonstrate actual injury in fact."); *Sanchez v. Wal–Mart Stores, Inc.*, 2008 WL 3272101, at *3 (E.D. Cal. Aug. 6, 2008) ("To have standing under the UCL Sanchez need only demonstrate that she spent or lost money due to an unfair business practice. … Through this action, Sanchez seeks an order of restitution to recover money lost from having to replace an allegedly defective stroller that she purchased from Wal–Mart due to an unfair business practice.... This is minimally sufficient to confer standing to assert a claim for relief under the UCL."); *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *4-*5 (C.D. Cal. Apr. 11, 2011) (plaintiffs met injury in fact requirement where they alleged that "they paid more for Mission Guacamole and Mission Bean Dip, and would have paid less for the products, if they had not been misled by the allegedly false and misleading labeling"); *Guido v. L'Oreal, USA, Inc.*, 2011 WL 13152488, at *4 (C.D. Cal. June 27, 2011) ("These facts boil down to an allegation that plaintiffs overpaid when they purchased the Serum. The court in *Kwikset* and other courts have found similar overpayment allegations sufficient to demonstrate an injury in fact."); *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1030 (N.D. Cal. 2016) (allegations of overpaying for a product sufficient to confer Article III standing).

1

**B.    Plaintiffs Have Article III Standing To Assert Claims
For Substantially Similar Products**

2

Defendants argue that "[b]ecause Duet Glide Swing is a distinct product with

3

distinct statements on the packaging … Plaintiffs' claims based on the Duet Glide

4

Swing must be dismissed for lack standing." Defs.' Br. at 11.  That is wrong.

5

California courts apply the "substantial similarity" test to determine whether a

6

plaintiff has Article III standing to assert claims on substantially similar products.

7

This test requires "judges look to various factors showing 'substantial similarity'

8

between the purchased and unpurchased products." *Salazar v. Honest Tea, Inc.*,

9

2015 WL 75223, at *6 (E.D. Cal. Jan. 6, 2015).  "[T]he critical inquiry … [is]

10

whether there is sufficient similarity between the products purchased and not

11

purchased." *Brown*, 913 F. Supp. 2d at 890 (citation omitted).  Products are

12

substantially similar if "[t]he misrepresentations across the product lines are

13

identical" and "those common misrepresentations are the crux of Plaintiffs' case."

14

*Id; see Dabish v. Brand New Energy, LLC*, 2016 U.S. Dist. LEXIS 167783, at *7

15

(S.D. Cal. Nov. 23, 2016) (finding Plaintiff had standing at pleadings stage for non-

16

purchased misbranded dietary supplements).  Moreover, the issue of whether there

17

are material differences in the products is better suited for the class certification

18

stage.  Indeed, "the issue of whether a class representative may be allowed to present

19

claims on behalf of others who have similar, but not identical, interests depends not

20

on standing, but on an assessment of typicality and adequacy of representation."

21

*Quiroz v. Sabatino Truffles New York, LLC*, 2017 WL 8223648, at *4 (C.D. Cal.

22

Sept. 18, 2017).

23

Here, Plaintiffs sufficiently allege the "challenged products [are] of a single

24

kind". *See Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1084 (N.D. Cal.

25

2014).  The Inclined Sleepers "are all inclined sleepers that incline upwards on one

26

end to raise a baby's head and torso between 10 and 30 degrees." FAC ¶ 20.  The

27

Inclined Sleepers also share the same fundamental design, featuring "tabs that

28

parents pull to life the Incline Sleepers from a supine position to an inclined position" and "multi-point restraints, which are intended to limit the baby's motion." Id. ¶ 20.  The Inclined Sleepers additionally "feature hard plastic external shells covering plush padding upon which babies are placed."  *Id.*  Moreover, each of the Inclined Sleepers are marketed and sold as "sleepers" that are safe for infants and include representations such as "sleeper," "portable napper," "lounger," as well as related images.  *Id.* ¶¶ 4, 25.  Thus, the Inclined Sleepers are all inherently unsafe for the same reason: The design and intended use increases the risk of infant death by asphyxiation.  *Id.* ¶ 5.  That is sufficient to establish that the products are substantially similar because "similarity in packaging or (mis)labeling can establish substantial similarity even among diverse products" *Baum v. J-B Weld Co.*, 2019 WL 6841231, at *5 (N.D. Cal. Dec. 16, 2019); *see also Figy*, 67 F. Supp. 3d at 1084 (N.D. Cal. 2014) (finding products sufficiently similar because "challenged products were of a single kind," and "bore the same [identical] challenged label"); *DePhillippis v. Living Essentials, LLC,* 2018 WL 7051065, at *3 (S.D. Cal. Nov. 29, 2018) (finding allegations that "the two product lines share similar packaging, composition, and labeling" sufficient).

### C.    Plaintiffs Have Standing To Pursue Injunctive Relief

Defendants argue "Plaintiffs cannot demonstrate they are likely to suffer a similar economic injury in the future by paying for a deceptively marketed 'inclined sleeper,' they lack standing to obtain injunctive relief."  Defs.' Br. at 12.  That is meritless.

As the Ninth Circuit has explained, a plaintiff may seek injunctive relief based on the "consumer's plausible allegations" that: (i) "[they] will be unable to rely on the product's advertising or labeling in the future," or that (ii) "[they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling:"

[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. … <u>Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.</u>  In some cases, <u>the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to</u>. … In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. … Either way, we share one district court's sentiment that we are "<u>not persuaded that injunctive relief is never available or a consumer who learns after purchasing a product that the label is false.</u>"

*See Davidson*, 873 F.3d at 1115 underlining added) (quoting *Duran v. Creek*, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016).

Furthermore, preventing plaintiffs from seeking injunctive relief against deceptive sales practices "would surely thwart the objective of California's consumer protection laws." *Henderson v. Gruma Corp.*, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) (finding that the plaintiff had standing to pursue injunctive relief because "Defendant [did] not [present] evidence or even allege [ ] that it ha[d] removed its allegedly misleading advertising from its products.").  However, should "the Court [ ] accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result." *See also Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Larsen v. Trader Joe's Co.*, 2012 WL 5458396, at *10-11 (N.D. Cal. June 14, 2012) (same).

Here, Plaintiffs plainly allege that they "remain[ ] interested in purchasing a safe [sleeper] in the future if Defendants' product[s] complied with relevant safety requirements for infant sleep."  FAC ¶¶ 9, 10.  Such an allegation clearly demonstrates Plaintiffs' desire to purchase Defendants' products in the future. Under *Davidson*, "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 873 F.3d at 1115.  Plaintiffs here face the same threat of future harm because, they cannot be certain that Defendants' products are suitable for infant sleep when they see the products on the store shelves.  Thus, Plaintiffs have alleged a "threat of future harm" sufficient for injunctive relief because "*Davidson* stands as clear authority that a plaintiff may seek injunctive relief based on the future harm of not being able to rely on the labeling when trying to make an informed choice, regardless of whether the product is reformulated or not."  *Kutza*, 2018 WL 5886611, at *4.

### D.   Plaintiff Brezinski's Claim Is Not Mooted By The Recall

Defendants argue "Plaintiff Brezinski's claims for monetary relief are moot given the recall and accompanying offer of refunds to purchasers of the Little Lounger Seat."  Defs.' Br. at 12.  That is incorrect.

A case is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also Los Angeles Cty. v. Davis*, 440 U.S. 625, 631 (1979) (holding a case is moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation").  If "an opposing party has agreed to everything the other party has demanded," the case may be considered moot. *GCB Commc'ns, Inc. v. U.S. Commc'ns, Inc.*, 650 F.3d 1257, 1267 (9th Cir. 2011); *see also Tosh-Surryhne v. Abbott Labs., Inc.*, No. CIV S-10-2603 KJM-EFB, 2011 WL

4500880, at *3 (E.D. Cal. Sept. 27, 2011).  However, where a refund is at issue, a Plaintiff's claim is only mooted where "Plaintiffs … allege they accepted a refund from Defendant, and Defendant … put[s] forth [ ] evidence that shows they have done so." *In re Big Heart Pet Brands Litig.,* 2019 WL 8266869, at *5.  That is not the case here.

Moreover, Defendants also ignore that a claim is not moot where, as here, "Plaintiffs seek … monetary relief that goes beyond asking for restitution." *Id.* Indeed, Plaintiff Brezinski seeks "compensatory, statutory, and punitive damages" as well as "an order of restitution and all other forms of equitable relief." *See* FAC, Prayer for Relief.  That is more than Defendants' recall would afford her.  And Defendants' "full refund" is simply a voucher for her product.  A voucher is hardly a full refund under such circumstances because the value of the product remains with Defendants.  In essence, Defendants' "recall" only allows Defendants to retain their ill-gotten profits because a voucher requires Plaintiff to make another purchase, and therefore does not provide her with any meaningful remedy.

Finally, Plaintiff Brezinski's claims are not prudentially moot.  First, because prudential mootness is an equitable doctrine, courts have held that the doctrine should apply only to "claims for equitable relief" which "appeal to the remedial discretion of the courts." *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012).  In accordance with this principle, most courts have held that prudential mootness applies only where "a plaintiff seeks injunctive or declaratory relief." *Jordan v. Sousa*, 654 F.3d 1012, 1024. (10th Cir. 2011).  Second, where "the relief that [ ] Plaintiffs seek and the relief that [Defendant] has provided under the recall are not one and the same … application of the prudential mootness doctrine is not warranted." *Philips v. Ford Motor Co.,* 2016 WL 693283, at *7 (N.D. Cal. Feb. 22, 2016).  As Courts in this Circuit acknowledge, "voluntary recall procedure[s] may not always be a sufficient avenue for consumers to obtain relief." *Kaupelis v. Harbor Freight Tools USA, Inc.*, 2019 WL 6998661, at *10 (C.D. Cal. Oct. 9, 2019);

*In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1115-16 (C.D. Cal. 2008) ("While there are advantages to restricting alternative recall remedies when a voluntary recall has taken place, there are also advantages to allowing alternative recall remedies—i.e., greater available remedies would encourage companies to take greater care in avoiding the production of hazardous products in the first place.").

Thus, a recall does not justify application of the prudential mootness doctrine, where, as here, Plaintiff seeks relief above and beyond what Defendants provide in their recall.  To the extent that Defendants' argument applies to Plaintiff's claims for equitable relief, this merely recasts the Article III argument above and would not preclude Plaintiff's claims for compensatory, statutory, and punitive damages.  *See supra* I(C).

## II.    THE COURT SHOULD DENY DEFENDANTS' MOTION FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6)

### A.    Plaintiffs Complied With The CLRA Notice Requirement

Defendants assert that "Plaintiffs' CLRA damages claim must be dismissed because Plaintiffs failed to provide Defendants with the notice required by Cal. Civ. Code § 1782."  Defs.' Br. at 14.  However, as explained in *Baird v. Samsung Elecs. Am., Inc.,* there is no purpose in dismissing a CLRA claim as untimely when more than 30 days' notice has elapsed:

> [T]he CLRA notice requirement "exists in order to allow a defendant to avoid liability for damages if the defendant corrects the alleged wrong within 30 days after notice[.]" … Consequently, dismissing a CLRA claim with prejudice for failing to meet the notice requirement is not required to satisfy the requirement's purpose.  Rather, courts must dismiss a claim until thirty days or more after a plaintiff has complied with the notice requirements.  Furthermore, in cases when a defendant has already had more than thirty days' notice after the filing of an otherwise untimely CLRA claim, there is nothing to gain by dismissing the claim with leave to amend, and the claim should be allowed to proceed if otherwise proper.

2018 WL 4191542, at *9 (emphasis added); *see also Keilholtz v. Superior Fireplace Co.*, 2009 WL 839076, at *3 (N.D. Cal. Mar. 30, 2009) ("Plaintiffs may proceed with their claim for injunctive relief, and may move for leave to amend their complaint to include a request for damages once they are able to show compliance with § 1782(d) and the thirty day notice period.").

Here, on February 19, 2020, Plaintiffs' counsel sent a demand letter on behalf of "Nayonna Berzinski …, and a class of similarly situated purchasers of Graco Children's Products' Little Lounger Rocking Seat (the "Little Lounger"), Graco's Duet Glide LX Baby Infant Gliding Swing and Napper/Portable Sleeper (the "Duet Glide"), and Graco's DreamGlider Gliding Seat and Sleeper (the "DreamGlider"). *See* Scott Decl., Ex. A, Ex. B. Thus, Defendants have been on notice that the DreamGlider and Duet Swing would be subject to Plaintiffs' CLRA claims since February 2020. Accordingly, Plaintiff Bishop's claims significantly post-date receipt of Plaintiffs' CLRA notice.

In sum, more than 100 days have elapsed since such notice was provided to Defendants, and Defendants have not sought to provide anything greater than the voucher provided in the sham "recall." Nor have they offered any remedy regarding the DuetGlide or DreamGlider. Thus, "there is nothing to gain by dismissing the claim … and the claim should be allowed to proceed[.]" *Baird*, 2018 WL 4191542, at *9.

### B.    Plaintiffs Sufficiently Allege Fraud

Defendants argue that "the FAC's scattershot allegations reveal no coherent theory as to what advertising statements were supposedly false or what material information Defendants failed to disclose," and therefore do not satisfy Rule 9(b). Defs.' Br. at 15-16. As explained below, Defendants' argument is meritless.

### 1. **Plaintiffs Allege Material Misrepresentations Regarding the Inclined Sleepers**

Defendants first assert that Plaintiffs fail to allege material misrepresentations representations to substantiate their fraud claims. *See* Defs.' Br. at 16-17. That is incorrect.

Allegations sounding in fraud must contain "'the who, what, when, where, and how' of the misconduct charged." *Kearns,* 567 F.3d at 1124. The allegations must be specific enough to give the defendant notice of the particular misconduct alleged so that the defendant may defend against the charge. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cirulli v. Hyundai Motor Co.*, 2009 WL 5788762, *4 (C.D. Cal. June 12, 2009) ("Generally, a plaintiff must plead 'with particularity' the time and place of the fraud, the statements made and by whom made, an explanation of why or how such statements were false or misleading when made, and the role of each defendant in the alleged fraud.").

| | |
|---|---|
| **Who:** | "Defendants Newell Brands DTC, Inc. and Graco Children's Products, Inc. for the manufacture and sale of Graco Little Lounger Rocking Seats (the "Little Lounger"), the Duet Glide LX Baby Infant Gliding Swing and Napper/Portable Sleeper (the "Duet Glide"), and the DreamGlider Gliding Seat and Sleeper (the "DreamGlider") (collectively, the "Inclined Sleepers") all of which were marketed as suitable for infants." FAC ¶ 1. |
| **What:** | "Defendants designed, manufactured, distributed, marketed, and sold three nearly identical products, all of which qualify as "sleepers[.]" *Id.* ¶ 4. |
| **When:** | "On July 10, 2018, Ms. Brezinski purchased Defendants' Little Lounger Rocking Seat[.]". *Id.* ¶ 9. |
| | "In or around November 2017, Ms. Bishop purchased Defendants' Graco DreamGlider Gliding Seat and Sleeper for her personal use." *Id.* ¶ 10. |
| **Where:** | "Ms. Brezinski purchased … from a Walmart store located in Moreno Valley, California for her personal use." *Id.* ¶ 9. |

|   |   |   |
|---|---|---|
|   |   | "In or around November 2017, Ms. Bishop purchased ... for her personal use." *Id.* ¶ 10. |
| **How**: |   | "This is a class action against Defendants Newell Brands DTC, Inc. and Graco Children's Products, Inc. for the manufacture and sale of ... Inclined Sleepers [ ] all of which were marketed as suitable for infants." *Id.* 1.  "Ms. Brezinski saw, read, and relied on Defendants' representations that the Little Lounger was suitable for infants, and thus safe to use for its intended purpose.  Specifically, Ms. Brezinski relied on the statement that the Little Lounger could be used as a 'lounger,' as well as other representations that the Little Lounger could be used to safely place infants in a supine position." *Id.* ¶ 9. |
|   |   | "Ms. Bishop saw, read, and relied on Defendants' representations that the DreamGlider was suitable for infants, and thus safe for use.  Specifically, Ms. Bishop relied on the statement that the DreamGlider could be used as a 'sleeper.'" *Id.* ¶ 10.  "Defendants ... marketed and sold the products as suitable for infants.  In fact, the DreamGlider's packaging features 'sleeper' and 'sleep' on the packaging in multiple places.  The packaging also features a sleeping infant.  The Duet Glide claims that the seat "doubles as a portable napper for use throughout the house."  The Little Loungers promise that parents will 'find just the right position for baby's comfort with the multi-position reclining seat.'  On the packaging of the Little Lounger, there is a photographic representation of an infant in a supine position[.]" |

Nothing more is required.  *See Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1316 (E.D. Cal. 2014) (Rule 9(b) satisfied where plaintiff alleged "the requisite 'who, what, when, where, and how' of the misconduct charged"); *Reitman v. Champion Petfoods USA, Inc.*, 2019 WL 1670718, at *4 (C.D. Cal. Feb. 6, 2019)( "Plaintiffs adequately allege the packages they saw and the who, what, when, where, [ ] and how of their claims."); *Beasley v. Lucky Stores, Inc.*, 2020 WL 408971, at *7 (N.D. Cal. Jan. 24, 2020) (same).

Further, Defendants' self-serving interpretation of the terms "lounger" and "sleeper" does not foreclose Plaintiffs' allegations.[1]  Plaintiffs allege that the products, as sold, were "were marketed as suitable for infants."  FAC ¶ 1.  They also allege that "Defendant[s] admit[ ] that the Little Lounger is an inclined sleeper" and that  "[b]oth the Duet Glide and DreamGlider are explicitly advertised as sleepers."  FAC ¶ 36.  Further they allege that"[i]nfants up to 1 year of age sleep between 14 and 16 hours per day," and that "Graco has sponsored reviews of the Inclined Sleepers, perpetuating the claim that the Inclined Sleepers are suitable for infant sleep."  FAC ¶¶ 2, 50.  Additionally other representations such as the "product was designed with your baby's comfort in mind[,] … conveniently doubles as a portable napper[,] … "the plush and roomy reclining seat makes nap time extra cozy," all lead consumers to believe the products are suitable for infants, when in fact they are not.  *Id.* ¶ 4.  Defendants' claim that the representations "are not material" and "do not mislead consumers" is nonsensical.

## 2.   Plaintiffs Plausibly Allege An Actionable Omission

Defendants also contend that "[t]he facts in the FAC simply do not make the showing necessary to satisfy Rule 9(b) regarding any alleged fraudulent omission."  That is wrong.

As an initial matter, "[w]hen a claim rests on allegations of fraudulent omission, … the Rule 9(b) standard is somewhat relaxed because 'a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act.'"  *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) (citing *Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987)).  A plaintiff sufficiently alleges a fraudulent omission where

---

[1] Defendants' contention that Plaintiff Brezinski "could not believe that the lounger was an inclined sleeper" is baseless.  The Little Lounger is, as denoted in its name, a rocker.  Rockers are intended to soothe babies to induce sleep or napping.  *See e.g.* https://bababing.com/blogs/news/baby-rocker-vs-baby-bouncer (last accessed June 19, 2020) ("A baby rocker is intended for nap time").  Defendants' disagreement with Plaintiffs' factual allegations is improper at the pleadings stage.

they "have alleged that they purchased the Product at specific locations and that if the alleged omission had been on the Products' labels they wouldn't have purchased them." *Browning v. Unilever United States, Inc.*, 2017 WL 7660643, at *3 (C.D. Cal. Apr. 26, 2017)   That is more than sufficient to  allege "the who, what, when, where, and how of the misconduct." *Id.*

Beyond Plaintiffs' allegations discussed above, Plaintiffs sufficiently allege a fraudulent omission.  First, Plaintiffs allege "Defendants' deceptive advertising of the Inclined Sleepers starts with their names: 'Lounge,' 'Sleeper,' and 'Portable Sleeper' … Defendants misled consumers to believe that the products are safe and suitable for babies to sleep." FAC ¶46.  Second, they state that "[t]he marketing statements conflict with the AAP's Guidelines and recommendations, and those of other infant sleep experts." *Id.* ¶ 47.  Third, Plaintiffs allege that "Defendants should have disclosed in their marketing statements that using the products for sleep is dangerous and contrary to medical guidelines and recommendations because this information would be material to a consumer's decision as to whether to purchase and/or own the Inclined Sleepers." *Id.* ¶ 51.  Finally, Plaintiffs allege that they "would not have purchased the [Inclined Sleepers] had [they] known that there was a significant risk that [they were] dangerous and unfit to perform [their] intended purpose." *Id.* ¶ 9,10.  Thus, Plaintiffs plausibly allege an actionable omission.

### C.    Plaintiffs State Claims For Breaches of Warranty

Next, Defendants argue that "Plaintiffs' breach of warranty claims fail because they do not allege facts sufficient to establish that any warranty was breached." Defs.' Br. at 21.  Not so.

### 1.    Breach of Express Warranty

To plead a claim for breach of express warranty, a plaintiff must allege that the seller "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1333-34 (C.D. Cal. 2013).

Here, Plaintiffs allege that Defendants "provided a description of its goods" by warranting that the products were infant "sleepers" and "loungers" and therefore were suitable for infants.  FAC ¶¶ 4, 9, 10.  This promise formed the basis of Plaintiffs bargain:  "[Plaintiffs] relied on the statement that the [Inclined Sleepers] could be used as a "lounger," [or "sleeper"] as well as other representations that the [Inclined Sleepers] could be used to safely place infants in a supine position."  *Id.* ¶¶ 9,10.  The warranty was breached because "[t]he Inclined Sleepers are inherently unsafe and unfit for their intended use.  Their use poses a number of serious safety risks that can lead to infant death and injury," such as "the risk of death by asphyxiation."  *Id.* ¶ 5.  Further, Plaintiffs were injured because they "would not have purchased the [Inclined Sleepers] had [they] known that there was a significant risk that the [Inclined Sleepers] [were] dangerous and unfit to perform its intended purpose."  *Id.* ¶¶ 9, 10.  Plaintiffs therefore state a claim for breach of express warranty.  *See In re Hydroxycut Marketing and Sales Practices Litig.*, 801 F.Supp.2d 993, 1008(S.D. Cal. 2011) ("[E]ven if Plaintiffs did not suffer any physical injury, the FAC alleges that the product is not safe for consumption.  Therefore, Plaintiffs allege that they did not get what they paid for and have sufficiently alleged breach of warranty."); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 853 (N.D. Cal. 2018) (Denying motion to dismiss express warranty claim because the court "must take plaintiffs' allegations as true that the levels of arsenic, lead, and BPA in the Products are unsafe"); *Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at *10 (C.D. Cal. June 6, 2016) (denying motion to dismiss an express warranty claim where "[t]he label states the Coconut Oil is 'healthful and delicious oil,' and that the product provides 'health benefits'").

## 2. Breach Of Implied Warranty Of Merchantability

The implied warranty of merchantability requires goods to "pass without objection in the trade under the contract description;… [be] fit for the ordinary purposes for which such goods are used[.]"  Cal. Com. Code. § 2314.  A "breach of the warranty of merchantability occurs when a product containing a latent defect is sold, not when the product's defect actually manifests itself." *Roberts v. Electrolux Home Prods., Inc*., 2013 WL 77553579, at *6 (C.D. Cal. Mar. 4, 2013); *see also Mack v. LLR, Inc.,* 2018 WL 6927860, at *13 (C.D. Cal. Aug. 15, 2018) (breach of implied warranty claims sufficient at pleading stage where the plaintiffs alleged that the leggings at issue have an "inherent defect" of being susceptible to tearing, even though "only a limited number of customers have complained in comparison to the number of leggings sold").  Thus, a "defect that 'creates a substantial safety hazard' can, of course, render a product unmerchantable." *Wallace v. SharkNinja Operating, LLC*, 2020 WL 1139649, at *11 (N.D. Cal. Mar. 9, 2020)

Tellingly, Defendants cite zero cases in support of their arguments that Plaintiffs' allegations are deficient.  That is because Plaintiffs' allegations are more than satisfactory under California Law.  First, Plaintiffs allege that the products are not fit for their ordinary purpose: "By positioning an infant at an incline between 10 and 30 degrees, the Inclined Sleepers significantly increases the risk that the infant's head will slip into a dangerous position, tilt to constrict the windpipe and/or cause the infant's face to become pressed against the padded fabric in the lounge and block airflow, which the infant may be unable to correct.  This increases the risk of death by asphyxiation." FAC ¶ 5.  Moreover, Plaintiffs also allege that the Inclined Sleepers would not "pass without objection in the trade," because industry groups have long held that infants should not be placed at an incline for any prolonged period of time.  For example, Plaintiffs allege that the American Academy of Pediatrics has long warned that "elevating the head of an infant's crib while the infant is supine is not recommended … [it] might compromise respiration." *Id.* ¶ 33.

Manufacturers were also warned that they "should follow safe sleep guidelines in their messaging and advertising." *Id.* ¶ 34. Thus, Plaintiffs allege a breach of the implied warranty of merchantability, as the products were unsafe (*i.e.* defective) at the time of sale and would not pass without objection in the trade. Plaintiffs therefore state a claim for breach of implied warranty. *Tracton v. Viva Labs, Inc.*, 2017 WL 4125053, at *8 (S.D. Cal. Sept. 18, 2017) ("Plaintiff has at least sufficiently alleged that a reasonable person would be deceived by the representations made on the label."); *Cunningham v. Ford Motor Co.*, 2015 WL 13764982, at *3 (S.D. Cal. Dec. 7, 2015) ("Plaintiff has alleged that Defendant breached the implied warranty of merchantability at the time of sale because the vehicle contained a defect that rendered it unsafe for its ordinary purpose, and has alleged facts that allow the Court to plausibly infer the defect existed at the time of sale.")

## III.   IT IS PREMATURE TO STRIKE PLAINTIFFS' CLASS ALLEGATIONS

### A.   California Law Applies On A Motion To Dismiss

Defendants argue that "The Court should dismiss Plaintiffs common-law causes of action … because they fail to identify the jurisdiction(s) under which they brings these claims." Defs.' Br. at 22. That is meritless.

Defendants are, in essence, arguing that the Court cannot decide the motion to dismiss absent a declaration of the applicable law. In doing so, Defendants conflate Fed. R. Civ. P. 12(b)(6) with Fed. R. Civ. P. 23. Rule 12(b)(6), however, is not the appropriate procedural vehicle to challenge class allegations. *Clerkin v. MyLife.Com*, 2011 WL 3809912, at *4 (N.D. Cal. Aug. 29, 2011). Rule 12(b)(6) permits a party to assert a defense that the opposing party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Thus, by its plain language, Rule 12(b)(6) outs itself as the wrong device for attacking class treatment." *Casas*, 2014 WL 12708972, at *9. Further, a class action is a procedural

device, not a claim for relief. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980). As such, class allegations are generally not tested at the pleadings stage and instead are usually tested after one party has filed a motion for class certification. *See, e.g* Inalou v. Contextlogic, Inc., No. 14-CV-02960-SVW(SHX), 2014 WL 12611284, at *3 (C.D. Cal. Oct. 6, 2014) "the Court finds it premature to reach Contextlogic's motion to strike Inalou's class allegations. These issues should be addressed after the parties have had an opportunity for discovery." (Wilson, J.).

Moreover, Plaintiffs' FAC makes clear that Plaintiffs intend to apply California law to their individual claims. *See Gold v. Lumber Liquidators, Inc.*, 2015 WL 7888906, at *5 (N.D. Cal. Nov. 30, 2015) ("For the purpose of a motion to dismiss … [t]he FAC does provide one clue as to Plaintiffs' intentions, however, by placing California law front and center."); FAC ¶ 8(" Plaintiffs bring claims against Defendants … [for] (5) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750, *et seq.*; (6) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (7) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*") *Id.* ¶¶ 9-10 ("Plaintiff Nayonna Brezinski is, and at all times relevant to this action has been, a resident of Moreno Valley, California. On July 10, 2018, Ms. Brezinski purchased Defendants' Little Lounger Rocking Seat from a Walmart store located in Moreno Valley, California … Plaintiff Rachael Bishop is, and at all times relevant to this action has been, a resident of Loomis, California."). As such, for the purpose of Defendants' motion to dismiss, the Court should apply California law.

### B.   It is Premature To Make Choice-Of-Law Determinations

Next, Defendants contend that "Plaintiffs cannot assert California common-law claims on behalf of a nationwide class[.]" Defs' Br. at 24. That is wrong.

"An order striking class allegations is 'functionally equivalent' to an order denying class certification." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1711 n.7

(2017).  Indeed, California courts widely agree that "it is premature to dismiss the nationwide class allegations at the pleading stage, and … the issue is more properly addressed at the class certification stage." *Shank v. Presidio Brands, Inc.*, 2018 WL 510169, at *11 (N.D. Cal. Jan. 23, 2018); see also *Joseph v. J.M. Smucker Co.*, 2019 WL 1219708, at *4 (C.D. Cal. Mar. 13, 2019) ("'Whether California law differs from the laws of other states in a way that is material to this litigation is not a proper inquiry at the pleading stage.  Such a deeply factual inquiry is more appropriately addressed at the class certification stage" once the parties have had a chance to conduct discovery."); *Nguyen v. Barnes & Noble Inc.*, 2015 WL 12766050, at *4 (C.D. Cal. Nov. 23, 2015) (holding that "most courts in this circuit hold that a claim should not be dismissed on a conflict of law analysis at the pleading stage, especially 'when dealing with a potential nationwide class action'").

Moreover, courts throughout this Circuit routinely certify nationwide and multi-state classes based on claims brought by named plaintiffs within California. *See, e.g., Melgar v. Zicam LLC*, 2016 WL 1267870, at *2 (E.D. Cal. Mar. 31, 2016) (certifying ten-state class); *Martinelli v. Johnson & Johnson*, 2019 WL 1429653, at *10 (E.D. Cal. Mar. 29, 2019) (certifying multi-state express warranty class); *Forcellati v. Hyland's, Inc.,* 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of consumers under California law); McCrary v. Elations Co., LLC, 2014 WL 1779243, at *17 (C.D. Cal. Jan. 13, 2014) (same); *Keilholtz v. Lennox Hearth Prod. Inc.*, 268 F.R.D. 330, 343–44 (N.D. Cal. 2010) (certifying a nationwide class of consumers under California law and the doctrine of unjust enrichment).

Further, if the Court were to later find material differences in the law sufficient to strike the nationwide class, "once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff[s] could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial." *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155,

1159 (C.D. Cal. 2012).  "[S]hould choice-of-law analysis appear to pose problems at the class certification stage, Plaintiff[s] could seek to certify subclasses of putative class members from individual states or subclasses of class members from groups of states with consumer protection laws that are not materially different."  *Id.* Moreover, Defendants must exhaustively detail how the differences are material to this litigation, a burden they have not attempted to meet.  *See Forcellati*, 2014 WL 1410264, at *2 (stating that "identifying differences in state law is but the first step …. The only differences that are relevant to the conflict-of-laws analysis are those that are material in this litigation." (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F. 3d 581, 590 (9th Cir. 2012)).  As such, any decision regarding the propriety of Plaintiffs' class allegations is premature at the pleadings stage.

### C.     Plaintiffs Have Standing To Bring Claims On Behalf Of A Nationwide Class

Finally, Defendants argue that "Plaintiffs lack standing to bring claims under the laws of states in which they do not reside or where they did not purchase the products at issue."  Defs. Br. at 25.  Defendants are merely recasting their choice of law arguments as Article III standing deficiencies.  However, as discussed above, such a determination is premature at the motion to dismiss stage of litigation.

For this reason, courts typically treat Defendants' standing argument as if it were a challenge to the applicable choice of law.  *See Real v. Johnson & Johnson Consumer Companies, Inc.*, 2016 WL 3220811, at *4 (C.D. Cal. Feb. 8, 2016) ("[T]he Court finds it premature to adjudicate representational issues at this juncture"); *Melendres*, 784 F.3d at 1262 ("Any issues regarding the relationship between the class representative and the passive class member … [is] relevant only to class certification, not to standing."); *Wolf v. Hewlett Packard Co.*, 2016 WL 8931307, at *7 (C.D. Cal. Apr. 18, 2016) (finding Defendant's contention "that Plaintiff lack[ed] standing to assert claims under the laws of states other than California" a question for class certification); *Robinson v. Unilever United States,*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Inc.*, 2018 WL 6136139, at *4 (C.D. Cal. June 25, 2018) (defendant's argument that "Plaintiff lacks standing to assert claims belonging to absent citizens from other states" held to be premature on motion to dismiss); *In re: Lithium Ion Batteries Antitrust Litig.*, 2016 WL 948874, at *4 (N.D. Cal. Mar. 14, 2016) (declining to determine standing on a motion to dismiss because "defendants may bring their standing challenge at [class certification] and seek dismissal of specified state law claims [at that time]").  Here too, Defendants' argument is inappropriate for resolution on the pleadings.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety.  Alternatively, if the motion is granted in any respect, Plaintiffs respectfully request leave to amend.  *See*, *e.g.*, *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) ("Ordinarily, leave to amend should be freely given in the absence of prejudice to the opposing party … In the absence of such a reason, denial of leave to amend is an abuse of discretion and reversible.").

Dated:  June 29, 2020

**BURSOR & FISHER, P.A**.

By:   */s/Brittany S. Scott*
      Brittany S. Scott

L. Timothy Fisher (State Bar No. 191626)
Blair E. Reed (State Bar No. 316791)
Brittany S. Scott (State Bar No. 327132)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
         breed@bursor.com
         bscott@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
701 Brickell Ave, Suite 1420
Miami, FL 33131

Telephone: (305) 330-5512
Facsimile: (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*